JOHN W. KING AND OTHERS, APPELLANTS *vs.* JAMES HAMILTON, JAMES STRICKER AND FRANCES HIS WIFE, HEZEKIAH FULKSE, ABRAHAM HANCY AND JOHN HOPKINS, APPELLEES.

The complainants, in the circuit court of Ohio, filed a bill to enforce the specific performance of a contract. The bill states that there is a *surplus* of several hundred acres, and by actual measurement it is found to be eight hundred and seventy-six acres : the patent having been granted for one thousand five hundred and thirty three and one-third acres; beyond the quantity mentioned in the contract.

It is a fact of general notoriety, that the surveys and patents for lands within the Virginia military district, contain a greater quantity of land than is specified in the grants. Parties, when entering into a contract for the purchase of a tract of land in that district, and referring to the patent for a description, of course expect that the quantity would exceed the specified number of acres. But so large an excess as in the present case, can hardly be presumed to have been within the expectation of either party. And admitting that a strict legal interpretation of a contract would entitle the purchaser to the surplus, whatever it might be, it by no means follows, that a court of chancery will in all cases lend its aid to enforce a specific performance of such a contract. [321]

The powers of a court of chancery to enforce a specific execution of contracts, are very valuable and important. For in many cases where the remedy at law for damages is not lost, complete justice cannot be done without a specific execution. And it has been almost as much a matter of course for a court of equity to decree a specific execution of a contract for the purchase of lands, where in its nature and circumstances it is unobjectionable, as it is to give damages at law, where an action will lie for a breach of the contract. But this power is to be exercised under the sound discretion of the court, with an eye to the substantial justice of the case. [328]

When a party comes into a court of chancery seeking equity, he is bound to do justice; and not ask the court to become the instrument of iniquity. When a contract is hard and destitute of all equity, the court will leave parties to their remedy at law ; and if that has been lost by negligence, they must abide by it. [328]

It is a settled rule in a bill for specific performance of a contract, to allow a defendant to show that it is unreasonable, or unconsciencious, or founded in mistake or other circumstances leading satisfactorily to the conclusion that the granting of the prayer of the bill would be inequitable and unjust. Gross negligence on the part of the complainant has great weight in cases of this kind. A party, to entitle himself to the aid of a court of chancery for a specific execution of a contract, should show himself ready and desirous to perform his part. [328]

If this large surplus of eight hundred and seventy-six acres in a patent for one thousand five hundred and thirty-three and one third acres should be taken as included in the original purchase, it might well be considered a case of *gross inadequacy of price.* [329]

When there was so great a surplus of land in the patent beyond that which it
called for, nominally, as that it could hardly be presumed to have been within the
view of either of the parties to the contract of sale; the court decreed a con-
veyance of the surplus, the vendee to pay for the same at the average rate per
acre, with interest, which the consideration money mentioned in the contract
bore to the quantity of land named in the same.  [330]

APPEAL from the circuit court of Ohio.

In the circuit court for the district of Ohio, James Hamil-
ton, James Stricker and Frances his wife, late Frances Hamil-
ton, heirs at law of Alexander Hamilton and others, grantees
of Alexander Hamilton, filed a bill for a specific perform-
ance of a contract entered into between Elisha King, the
father of John W. King, one of the appellants, and Alexan-
der Hamilton, on the 8th of February 1815, for the sale of
certain lands in the state of Ohio within the Virginia milita-
ry district, between the little Miami and the Scioto river.

The contract was in the following terms :

"I this day sell to Alexander Hamilton all my lands lying
on the Miami river, in the state of Ohio, one thousand five hun-
dred and thirty-three and a third acres, as by patent in my
name; also, three hundred and thirty-three and one third, taken
off the lands patented in the name of Sackville King, of one
thousand acres.   This land of three hundred and thirty-three
and one third acres, taken from S. King's, is to be done adjoin-
ing to the entry of E. King's of one thousand five hundred and
thirty-three and one third.   He, the said Hamilton, is bound to
pay to Elisha King, for this land, nine hundred and forty-six
pounds sixteen shillings of current money of Virginia, in
three annual payments, beginning December 25, 1805 ; then
to pay three hundred and fifteen pounds twelve shillings.
Also, in the years of 1806 and 1807, on each *Christ's* day, or
before, to make the full payments, as is above.   The manner
and agreement made by us is in payment as tenders : the said
Hamilton takes to this country horses, to be sold at twelve
months' credit, taking bond and good security, which bonds
*is* lawful tenders from year to year ; and, on these tenders
being made, the said King is bound to give to the said
Hamilton good titles to the said lands.   We do bind ourselves,
our heirs, executors, administrators, firmly, by these pre-

sents, in the penalty of two thousand pounds, in this our bargain. Given under our hands and seals."

When this contract was made, Elisha King had a patent for his entry, No. 1548. Sackville King's entry, No 1549, was held by him without any title to it; and afterwards, in 1812, Sackville King's whole entry was conveyed by him to another, who now holds the same. Alexander Hamilton entered on No. 1548 immediately after his purchase, supposed to be one thousand five hundred and thirty-three and one-third acres; and, with others holding under him, made valuable improvements on it, and still holds possession of the same.

The bill states that Hamilton continued to make payments until the 22d June 1809, at which time, he having paid one half of the purchase money of the tract estimated at one thousand five hundred and thirty-three and one-third acres, King made a conveyance to him of seven hundred and sixty-six and two-thirds acres, supposed to be a conveyance of one half of the same. The bill charges, that there was a large surplus of several hundred acres, and that this sale was in gross; and insists on a conveyance of the whole of the lands in No. 1548. The patent to Elisha King for No. 1548 bears date the 10th of March 1804, and is for "a certain tract of land containing one thousand five hundred and thirty-three and one-third acres," as by survey bearing date the 13th of April 1792; and sets forth the metes and bounds, according to this survey.

The bill claims an allowance for the loss of three hundred and thirty-three and one-third acres of Sackville King's entry; and proceeds to state and charge sundry payments since the conveyance of the 22d of June 1809, the last of which was made on the 26th of March, 1818. It then admits that there was due at the time of filing the bill, on the tract of one thousand five hundred and thirty-three and one-thirds acres (deducting the consideration money expressed in the conveyance for seven hundred and sixty-six and two-third acres, the rateable value of the other tract of three hundred and thirty-three and one-third acres which was lost, and all the subsequent payments,) the sum of one thousand

seven hundred dollars yet to be paid by Hamilton to King on the contract for the one thousand five hundred and thirty-three and one-third acre tract; which sum they say they were always ready to pay since the death of Alexander Hamilton, if they could have procured a fair settlement; and also, that they are informed and believe that Alexander Hamilton, when he could have a settlement and receive a title, was always ready in his life time to make payments. The bill then goes on to state a number of improvements made on that part of the land not conveyed by King to Hamilton; which improvements are stated to have been made by Hamilton and the other appellees, claiming by purchase under him.

The bill then prays an injunction to a judgment in ejectment, recovered at June term 1824 for that part of the tract of one thousand five hundred and thirty-three and one-third acres, not conveyed. It asks a decree for a conveyance, on payment of the balance; and for general relief.

The answer denies that the sale was in gross, and also that the complainants were at any time ready to perform the agreement, by the payment of the purchase money for the tract which was agreed to be sold; and alleges that the payment of the same was evaded and delayed, although frequent promises of performance were made. To this answer there was a general replication.

At January term 1826, an agreement was entered into by the parties, (which being entered of record, takes the place of an interlocutory decree,) in order *to settle so much of the controversy;* that there was then due to King, on the purchase money and interest, one thousand eight hundred and ninety-six dollars eighty-eight cents, after deducting five hundred and sixty-six dollars sixty-six cents on account of the land sold, included in Sackville King's patent, which, with interest from that time, was all that was to be paid King, if the court decreed that the contract covered the surplus above one thousand five hundred and thirty-three and one-third acres, in the entry 1548. The times for paying that sum were agreed; and, also, that on the payment, deeds should be executed by respondents, covering the whole land, if the

[King and others *vs.* Hamilton and others.]

contract was decreed to be in gross, and the injunction be made erpetual against the proceedings in ejectment, &c. This agreement *reserved* for future decision the single question whether the contract of sale was a sale in gross, or by the acre, as to the land in the entry 1548; and concludes as follows: "*to avoid all dispute*, it is the *express understanding of the parties*, that the whole question concerning the said surplus land is reserved for future decision; and all claims for damages respecting failure in the title for the tract of three hundred and thirty-three and one-third acres of land, in the bill mentioned, are waived."

At July term 1826, the court decreed, that the sale by Elisha King to Alexander Hamilton, was a sale of the whole of the land in No. 1548; and that the defendant, John W. King, should, within two months, convey to the complainants, in fee simple, with covenants of special warrantry, the lands not already conveyed by E. King to Alexander Hamilton; that the complainants, within two months, should pay the balance agreed, with interest; and that each party should pay their own costs at or before the next term. As to the other defendants, the bill was dismissed generally.

From this decree John W. King appealed to this court.

For the appellants it was contended, by Mr Doddridge :

1. That, under the agreement entered into by the parties to the suit at January term 1826, John W. King reserved to himself the right to urge, as to the surplus land, whatever could have been urged as to the relief claimed for the land not surveyed, as well as every other separate defence which he had a right to make as to the surplus, independent of the agreement.

2. That no evidence was given in the case to establish the fact, that the payments made by Hamilton were for the land not conveyed; and that the payments made were to be applied to the land which had been conveyed. So that, for the land not conveyed, nothing had been paid for a period of nineteen years.

3. No possession of the land not conveyed was delivered by King to Hamilton.

4. That the sale was not a sale in gross; and the sale in gross having been denied in the answer, and no evidence given, the court erred in finding for the appellees.

5. That the appellant ought not to be required in a court of equity to yield the title to so large a surplus without compensation, and without the clearest proof of the agreement.

The law of Virginia regulating lands under military grants, declares, that as to the surplus lands in a grant, any one may give the warrantee notice to survey the quantity included in the grant; and if he neglects or refuses to do so, he may, after twelve months, apply to the county court, and have a survey made for himself; and he may then enter the surplus land, and thus become the legal owner of it. This gives the original grantee a right of pre-emption to all the surplus beyond five per cent, which is allowed in every grant. This must be done during the life of the original grantee, and during the continuance of his title; after a sale, and after a descent cast, the right to the surplus is abandoned by the state to the grantee.

In Ohio, there is no court to which an application for a resurvey can be addressed; and therefore the right to the surplus lands in the Virginia reservation of military lands in that state is complete in the grantee, unless it was so great as to amount to a fraud.

The right therefore of King to the whole land included in the grant, it being within the Virginia reservation, is complete. At law, it is necessarily so; and this is recognized in Taylor vs. Brown, 5 Cranch, 234, 241; and it is so in equity. Dunlap vs. Dunlap, 12 Wheat. 574.

The surplus lands are therefore to be considered as having passed to Elisha King, as fully as if the whole actual quantity had been stated in the grant.

It is next assumed as a position, that whenever there is an excess or deficiency of quantity of lands sold, and both parties are ignorant of the fact at the time of the sale, equity will relieve the party aggrieved, by adding to or reducing the purchase money pro rata; and the relief given proceeds

on the ground of mistake. In support of this principle there have been decisions in the courts of Virginia. 1 Call, 301. 2 Hen. and Munf. 244. Hall *vs.* Cunningham, 2 Hen. and Munf. 336. In a note to this case, authorities are referred to for the purpose of showing what relief ought to be granted under certain circumstances. 2 Hen. and Munf. 161, 179, 175, 177. 1 Hen. and Munf. 201.

These authorities establish: 1. That if the excess be considerable, and the same of a deficiency, and each party is innocent; there should be a dissolution of the whole contract. 2. If the excess or deficiency be small, and there has been no evictions, there should be an addition to or deduction from the gross sum, after the rate of the whole contract. 3. If deeds have been made and possession given, and there has been an eviction of part, compensation should be decreed according to the value at the time of the eviction. Cited, also, 8 Cranch, 371, and note to the same case, p. 375.

These cases show, that there is a general rule to give relief where the excess exceeds five per cent; and that this relief will be denied when the contract was for a gross sum; or where the vendor had perfect knowledge of the land, and the vendee had not, but the vendee took upon himself the risque as to lines and quantity. That courts lean against the establishment of such contracts, having a gaming or immoral tendency. That whatever may be the terms of the written contract, the fact of a sale by the acre or in gross, lies in averment; and consequently, where either of these facts is charged in the bill as a ground for relief, and the ground is denied in the answer, the answer will prevail without proof of the fact; and the bill will be dismissed, the answer being responsive to a material charge in the bill. That the words "more or less," and proof that the whole tract was sold, are not of themselves sufficient to prevent relief; and there is no adjudged case proceeding on that ground alone. An examination, with reference to these authorities, of the contract between Elisha King and Hamilton, will abundantly show, that had the whole property sold been

conveyed, and paid for by Hamilton, a discovery of the surplus afterwards would have entitled the vendor to relief. The situation of the country settled, and the property held by each grantee well known; the relations of the parties to it, Hamilton living on adjoining lands, and King residing at the distance of six hundred miles, and ignorant of the practice of including a much larger quantity of land in the survey than the grant called for; are circumstances which should materially operate when the transactions and the claims arising out of it are considered.

It is confidently asserted, that the facts of this case will not authorise a court to decree a specific performance of the contract; independent of the principles and the rules of law which have been urged. While it is admitted, that for a forfeiture occasioned by a breach of his contract, the vendor may be the subject of relief in a court of equity in favour of a vendee; it is relied upon, that the vendee must account for his non-performance by circumstances which will exculpate himself. In this case, the failure of Hamilton to pay for the land according to the contract is fully proved by the whole case. Cited Picket *vs.* Dondall, 2 Marsh. 115.

The counsel for the appellants also contended; that the operation and just construction of the transactions between the parties were, that the payments made were to be applied to the portion of the land which had been conveyed; and that this was considered a performance of the contract so far as the purchaser was entitled to the same.

He also contended; that the object of the complainant was not only to be relieved from a forfeiture, but also to ask the specific execution of a contract, certainly made under a mistake, and by which hard and unconscionable terms will be imposed on the appellant. Courts of equity are not bound to decree a specific performance in all cases; they do so only at their discretion; and they will withhold such a decree where the terms would be hard, although no fraud should be proved. 1 Wash. Rep. 270.

[King and others *vs*. Hamilton and others.]

Mr J. C. Wright, for the appellees.

In 1805 the whole tract was sold by Elisha King to Hamilton, referring to the patent by number and quantity. Hamilton took possession of the land under the contract, and improved it; and in 1809, a deed was made for one half of one thousand five hundred and thirty-three and one-third acres. Before the deed was made there had been no survey; but an estimate of the quantity was made by the parties. In 1818, Elisha King conveyed the remaining half to John W. King, according to a survey then made; and thus he took the legal estate subject to the agreement with Hamilton, to which he had been a witness. He stands thus in the relations of his father; and the estate held by him is subject to the equities of the appellees, as he had full notice of this contract. He does not stand as an innocent purchaser, and entitled to favour; but if his purchase was made to the injury of the rights of Hamilton, he is to be considered as an intruder. When he received the conveyance, more than half of the purchase money had been paid; or was paid before this suit. Those who purchased from Hamilton have improved the part so acquired; and these improvements are out of the seven hundred and sixty-six and two-thirds acres conveyed by King.

All the questions in the case, except that of the right to the surplus land, have been settled by the agreement of 1826. The appellees upon that question contend that the sale was in gross.

The court will go behind the deed executed by Elisha King for part of the land, to ascertain what was the intention of the parties. 1 Call's Rep. 301.

It is denied, that the rule laid down by the counsel for the appellant, as to surplus, exists. The principles which have been established are, that when a sale is made by metes and bounds; by general terms; where the whole thing is sold, as in this case, the land is described as held under a patent; and for a sum specified in amount, and not pro rata as to quantity; it is a sale in gross: and the purchaser takes all the land within the boundaries. Cited 12 Wheat. 574. Powell *vs*. Clarke, 5 Mass. 355. 1 Caines, 493. 2 Johns. Rep. 37. Vowles et al *vs*. Craig et al. 8 Cranch. 374. Also, Sugden

on Vendors, 200.   2 Bibb's Rep. 451.   1 Madd. Chan. 74, 76, 77.   1 Call's Rep. 301.

What is the contract?   " I this day sell to Alexander Hamilton *all* my lands lying on the Miami river in the state of Ohio, one thousand five hundred and thirty-three and a third acres, as by patent in my name."

The case admits that the patent referred to was the one obtained on survey No. 1548; and the survey sets forth the metes and bounds of the tract within which is now the whole claim of the appellees.  The contract is therefore one for the whole land, not by quantity, but by patent; and " all" the lands of the vendor are sold.

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes up on appeal from the circuit court of the United States, for the seventh circuit, in the district of Ohio.

The bill, in the court below, was filed for the purpose of obtaining the specific execution of a contract entered into between Elisha King, the father of John W. King, and Alexander Hamilton, the father of James Hamilton; and also to enjoin all further proceedings at law on a judgment in an action of ejectment, obtained by John W. King for the recovery of possession of a part of the land alleged to have been comprised within the contract.

The answer to this bill is very inartificially drawn; but no exceptions were taken to it, and the general replication put in.  No proofs were taken upon the principal matters in dispute : but the cause came on to a hearing upon the bill and answer, and exhibits, and the agreement which had been entered into between the counsel for the parties in the progress of the cause.   This agreement puts at rest many of the questions that might otherwise have arisen, and reduces the subject of dispute to the single inquiry respecting what is called by the parties the *surplus land :* and this involves the inquiries ; first, whether this surplus is embraced in the original contract, and if so ; then, secondly, whether, under the circumstances of the case, the complainants in the court below have not lost their right to call upon a court of equity to enforce a specific performance of that contract.

[King and others *vs.* Hamilton and others.]

The contract signed by Elisha King and Alexander Hamilton bears date on the 8th of February 1805, and is as follows : "I this day sell to Alexander Hamilton, all my lands lying on the Miami river, in the state of Ohio, one thousand five hundred and thirty-three and one-third acres, as by patent in my name; also three hundred and thirty-three and one-third acres, taken off the lands patented in the name of Sackville King, adjoining to that entry of Elisha King, of one thousand five hundred and thirty-three and one-third acres. He, the said Hamilton, is bound to pay to Elisha King for this land nine hundred and forty-six pounds sixteen shillings, current money of Virginia, in three payments, beginning December the 25th, 1805 ; then to pay one hundred and fifteen pounds twelve shillings, also, in the year 1806 and 1807, each Christmas day or before, to make the full payments, as is above. The manner and agreement made by us is in payment as tenders: the said Hamilton takes to this country, horses, to be sold at twelve months credit, taking bond and good security, which bond is lawful tenders from year to year ; and on these tenders being made, the said King is bound to give to said Hamilton good title to said lands, &c."

The bill states, that there is a *surplus of several hundred acres*, beyond the specific quantity mentioned in the contract. The answer alleges, that from actual survey, the patent is found to contain two thousand four hundred and nine and a half acres ; which will leave a surplus of eight hundred and seventy-six acres ; a quantity equal to more than one half of the whole number of acres mentioned in the contract.

It may perhaps be assumed as facts of general notoriety, that the surveys and patents for lands lying within the Virginia military district, contain a greater quantity of land than is specified in the grant: and that parties would of course, when entering into a contract for the purchase of a tract of land, and referring to the patent for a description, expect, that the quantity would exceed the specified number of acres. But so large an excess as in the present case can hardly be presumed to have been within the expectation of either party ; and admitting that a strict legal interpre-

tation of a contract would entitle the purchaser to the surplus, whatever it might be, it by no means follows, that a court of chancery will in all cases lend its aid to enforce a specific performance of such a contract.

The agreement entered into by the counsel which has been hitherto, and which will be more particularly noticed hereafter, puts an end to all questions respecting the land, to the extent of one thousand five hundred and thirty-three and one-third acres. Otherwise it might well be questioned, whether the complainants in the court below could compel a conveyance for any more than has already been conveyed under the contract.

In 1809 a conveyance was given for seven hundred and sixty-six and two-thirds acres; the full consideration for which, after deducting five hundred and sixty-six dollars and sixty-six cents, for defect of title in Elisha King to the three hundred and thirty-three and one-third acres of land included in Sackville King's patent, had not been paid when the bill was filed.

If the rights of these parties were to be governed, and determined, solely, by the question whether the contract covers the surplus land, we should have no difficulty in coming to the conclusion that it does. There is nothing upon the face of the contract from which it can be satisfactorily inferred that it was intended to be a sale by the acre. The language of the contract on the part of King is, "I this day sell to Alexander Hamilton, all my lands lying on the Miami river, in the state of Ohio, one thousand five hundred and thirty-three and one-third acres, as by patent in my name." Had it been intended a sale by the acre, the language would doubtless have been, one thousand five hundred and thirty-three and one-third acres of, or a part of my lands, &c.: instead of which it is "all my lands, as by patent in my name." Reference is made to the patent for a description of the land, and to ascertain the subject matter of the contract. And whatever would pass under the patent to King, would be included in the sale to Hamilton. The number of acres is mentioned in reference to what appears by the patent, (one thousand five hundred and thirty-three and

one-third acres, as by patent in my name), and not as designating the precise quantity sold. But admitting the contract covers the surplus land ; it is contended on the part of the appellants, that a court of equity will not, under the circumstances of this case, enforce a specific performance of the contract. It is insisted, however, on the part of the appellees, that all equitable considerations are precluded by the agreement entered into by the counsel, which has been referred to ; and that the question is narrowed down to the single inquiry, whether the surplus land is included in the original contract of 1805. If such is the construction to be given to this agreement, the question has already been answered. It becomes therefore very material to examine, whether this is the fair and reasonable interpretation of the agreement. It is as follows.

1. " It is agreed that the complainants are at this time, January 6, 1826, indebted to the said John W. King, one of the defendants above named, for the balance of the purchase money, including up to the date aforesaid the interest, one thousand eight hundred and ninety-six dollars and eighty-eight cents, *for the one thousand five hundred and fifty-three and one-third acres* mentioned in the said bill of complaint. This amount, it is agreed between the parties by their counsel, is now due to the said John W. King ; after deducting from the gross sum agreed to be paid by the ancestor of the plaintiffs to the ancestor of the defendants, which will appear by contract, five hundred and sixty-six dollars and sixty-six cents, for the three hundred and thirty-three and one-third acres patented to Sackville King, mentioned in the contract; to which the defendants, or their ancestor, never had title. The sum of one thousand eight hundred and ninety-six dollars and eighty-eight cents is the whole amount due the said John W. King *for the one thousand five hundred and thirty-three and one-third acres of land,* the number of entry 1548, as mentioned in said bill ; and it is hereby expressly understood between the parties, by their counsel, that the sum last mentioned, if it should be decreed by the court hereafter, or by the parties agreed to, that the surplus lands lying within entry 1548, is covered by the contract before referred to, for

the gross sum named ; the said sum, with interest from this time until it is paid, is the whole amount due the defendant, John W. King, upon said land contract; but it is hereby agreed between the parties, by counsel, that the question whether the said contract covers the surplus in said entry No. 1548, shall be reserved for future decision and determination; *and whether the purchase* for the sum mentioned in said contract *does* not entitle the complainants to the surplus land said to be contained in said No. 1548 : and it is hereby agreed by the parties, that the complainants shall now pay to the clerk for the said defendants or counsel, seven hundred and thirty dollars, part and parcel of the said sum of one thousand eight hundred and ninety-six dollars and eighty-eight cents, before admitted to be due ; and that the said complainant shall pay the balance by the next term of this court, or within a reasonable time afterwards. And it is further agreed by the parties, by their counsel, that the said John W. King, and the other defendants do join, if it appear necessary, shall execute to the complainants a good deed with covenants of general warrantry for the land which the complainants shall be entitled to under the contract aforesaid, immediately upon the payment of the purchase money. It is further agreed by the parties, by their counsel, that the complainants shall pay the cost in the action of ejectment brought in this court for the lands named in the bill, and the costs of this suit ; to abide the decision of this court thereon. It is further agreed by the parties, by their counsel, that upon the payment of the whole of the purchase money which may be due the defendants for said land, then, and in that case, the injunction to be made perpetual. And, to avoid all dispute, it is the express understanding of the parties, *that the whole question concerning the said surplus land* is reserved for future decision ; and that all claims for damages, respecting the failure in the title for the tract of three hundred and thirty-three and one-third acres of land, are waived."

This agreement is somewhat obscurely worded, and its construction not without difficulty. Doubts have been entertained by the court, whether the appellants have not thereby precluded themselves from resisting a specific per-

[King and others *vs.* Hamilton and others.]

formance of the contract, on the equitable grounds that might otherwise be set up. We have however come to the conclusion, that the appellants, as to the surplus land, have reserved to themselves the right to set up whatever could have been urged against the relief sought, as to all the land not conveyed, as if the agreement had not been entered into. And that as to the surplus land, the case is open, and to be considered entirely independent of the agreement.

Some of the leading objects of the agreement appear to have been to settle and fix the amount of payments that had been made, and the deduction to be allowed on account of the failure of title to the land patented to Sackville King ; and to ascertain the balance due, which was found to be one thousand eight hundred and ninety-six dollars and eighty-eight cents, and which by the terms of the agreement is declared to be the whole amount due *for the one thousand five hundred and thirty-three and one-third acres:* thereby implying, that the consideration agreed to be paid, was for that quantity of land; and that as to that quantity no further dispute existed : but at the same time providing, that if the court should decree that the surplus land was covered by the contract, that balance should be deemed the full consideration for the whole. And then adds, "but it is hereby agreed, that the question whether the said contract covers the surplus land shall be reserved for future decision and determination." If this had been the only question intended to be reserved, the agreement would have stopped here: there is no ambiguity thus far, or any necessity for putting the same question in a different shape. But the argument goes on, "*and* whether the purchase for the sum mentioned in the contract *does* not entitle the complainants to the surplus land said to be contained in No. 1548."

There would appear to be two distinct questions reserved for future determination. 1. Whether the contract covers the surplus land : and if so, secondly, whether the complainants are *now* entitled to it, by virtue of their original purchase. If this view of the agreement be correct, the second question reserved must have been intended to leave open all objections to the claims for the surplus lands. If however

the agreement had stopped here, there might have been serious doubts whether the question reserved was not, whether the contract covered the surplus land. But the concluding clause in the agreement seems to have been added, to remove all doubts upon the question. "And to avoid all dispute, it is the express understanding of the parties that the *whole question* concerning the said surplus land is reserved for future decision." If the only question reserved was, whether the contract covered the surplus land, there was no necessity or fitness in this last provision. That question had been explicitly and in terms reserved; and to superadd to it, that the *whole question* concerning the surplus was reserved, will admit of no other reasonable construction, than that as it respected such surplus, the case was to stand as if the agreement had not been made.

This being the construction given by the court to this agreement of the counsel, it remains to inquire whether the complainants in the court below made out a case, which, according to the rules which prevail in courts of equity, entitled them to a specific execution of the contract as to the surplus land.

This part of the case has not been much pressed upon the court, and it is difficult to perceive on what grounds it can be sustained. To have enforced a specific execution of this contract would, at any time and under any circumstances, have been granting a strict legal right against the substantial justice and equity of the case.

To show this, it is only necessary to state some of the leading facts in this case. The contract bears date in the year 1805, and by it all the payments for the land were to be completed in December 1807, on which the title was to have been given. Payment only of a part of the purchase money, and not even to one half the amount, had been made when the bill was filed. No remedy at law therefore ever did exist. The purchaser never was in a situation when he could aver performance of the contract on his part. It is very evident, that no consideration whatever has been given for this surplus land. The price was doubtless estimated by the parties upon the specific number of acres, (although the

sale was not by the acre), and which at that time was probably supposed to be nearly the quantity of land covered by the patent to King. This however turns out to be otherwise. The surplus is very large, amounting to more than one-half the number of acres mentioned in the contract. There are no grounds for charging either party with any knowledge of this fact. King manifestly could not have known it, or it would not have been entirely overlooked in the sale. And Hamilton ought not to be charged with a knowledge of it, without satisfactory evidence; as it would be imputing to him a gross fraud. It is therefore a case of mutual mistake, or ignorance of an important fact, in relation to the subject matter of the contract; and that contract still executory, and now sought to be enforced as to lands for which no consideration has been paid. It is therefore a *case in which the parties ought to be left to their strict legal rights.*

The bill alleges that Hamilton, in his life time, made valuable improvements on that part of the land not included in his deed of 1809. When these improvements were made, does not appear. The contract is silent as to the time when the purchaser was entitled in the possession, and the bill does not allege that possession was taken, or the improvements made, with the assent of King; and the answer expressly denies that King put Hamilton in possession of any part of the land except that for which the deed was given in 1809, and alleges that the possession of any other part was without authority, and unlawful.

In 1818, John W. King, one of the appellants, became the purchaser of all the lands not included in the deed of 1809. He was, it is true, a purchaser with notice of the contract between his father and Hamilton, but he also had notice of all the circumstances with respect to his failure in making payment; and that he had not at that time made payment even for the land which had been conveyed to him: and no further payments had been made when this bill was filed, or any disposition shown on the part of the appellees to perform the contract on their part: and the bill in this case was not filed until nearly seven years from that time,

and not until a judgment in ejectment had been obtained, to recover possession of the land not covered by the deed of 1809.

All the payments made upon this purchase might well be applied to the land which has already been conveyed; and was it not for the agreement entered into by the counsel, the complainants in the court below would have had no equitable grounds for asking a specific execution of the contract for any portion of the one thousand five hundred and thirty-three and one-third acres not included in the deed of 1809. But that agreement has put an end to all questions in relation to the residue of the one thousand five hundred and thirty-three and one-third acres; leaving the case open, as we understand it, to all objections to a specific execution of the contract as to the surplus land, to the same extent as if the agreement had not been entered into.

Did this case then, thus made out in the court below, entitle the complainants to a specific execution of the contract as to the surplus land? We think it did not, according to the well settled rules of courts of equity on this subject. This branch of the powers of a court of chancery is very valuable and important. For in many cases, even where the remedy at law for damages is not lost, complete justice cannot be done without a specific execution; and it has become almost as much a matter of course for a court of equity to decree a specific execution of a contract for the purchase of lands, where in its nature and circumstances it is unobjectionable, as it is to give damages at law, where an action will lie for a breach of the contract. But this power is to be exercised under the sound judicial discretion of the court, with an eye to the substantial justice of the case. When a party comes into a court of chancery, seeking equity, he is bound to do justice, and not ask the court to become the instrument of iniquity. Where a contract is hard, and destitute of all equity, the court will leave parties to their remedy at law; and if that has been lost by negligence, they must abide by it. It is a settled rule, therefore, to allow a defendant in a bill for a specific performance of a contract, to show that it is unreasonable or unconscientious, or founded

in mistake, or other circumstances, leading satisfactorily to the conclusion, that granting the prayer of the bill would be inequitable and unjust. Gross negligence on the part of the complainant, has great weight in cases of this kind. A party, to entitle himself to the aid of a court of chancery for the specific execution of a contract, should show himself ready and desirous to perform on his part. These are familiar and well settled rules in courts of chancery, and have a strong bearing upon this case. If this contract had been carried into execution by giving a conveyance for the land, a court of chancery would not have given relief to the other party. But the contract is still executory; and the complainants, after the lapse of twenty years, seek for the specific execution of a contract which has not been performed on their part, and the execution of which would be manifestly unjust and unequitable.

If this large surplus of eight hundred and seventy-six acres should be taken as included in the original purchase, it might well be considered a case of *gross inadequacy* of price.

So far therefore as the immediate rights of the complainants are involved, no equitable claims has been sustained for a specific execution of the contract for the surplus land. It is however alleged in the bill, that sales have taken place, and valuable improvements made upon parts of the land not covered by the deed of 1809. This is not denied in the answer, although it is alleged that such improvements were made without the assent of King. No proofs have been taken with respect to these improvements. Their value and extent are left altogether uncertain. But the rights of third persons, who may be bona fide purchasers under Hamilton's supposed title, may be materially affected by dismissing the bill as to the surplus land. Some diversity of opinion has existed amongst us as to the final decree, on account of those improvements. We have however come to the conclusion, that the complainants in the court below shall have a decree for the surplus land, at the average rate or price which the consideration mentioned in the contract bears to one thousand eight hundred and sixty-six and two-thirds acres,

the number of acres specified in the purchase; together with the interest thereon, from the 25th of December 1807, being the time at which all the payments were to have been completed, according to the contract. The decree of the circuit court must be so modified. It should have required payment of the consideration money before the conveyance was to be given. Such are the terms of the original contract, and also of the agreement of the 6th of January 1826.

The decree of the circuit court as to John W. King, must accordingly be reversed, and affirmed as to the other defendants in the court below; and the cause sent back with instructions to cause a survey to be made, to ascertain the number of acres contained in the patent; and that, on payment of the balance and interest due according to the settlement made on the 6th of January 1826, and also a further sum for the surplus land above one thousand five hundred and thirty-three and one-third acres, according as the quantity shall be found on actual survey, at the same average rate or price as in the original contract, with the interest therefor from the 25th day of December 1807; then the said John W. King to be required to make and execute a good and sufficient deed of conveyance in fee simple to the complainants in the court below, for all the lands contained in the patent to Elisha King mentioned in the pleadings, and which have not been already conveyed by the deed of Elisha King, bearing date the 22d of June 1809. The money to be paid and the deed executed, at such time as the circuit court shall direct. The injunction to be continued for such time, and under such modification, as shall be judged necessary by the circuit court for the purpose of carrying this decree into effect.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel; on consideration whereof, it is decreed and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed as to John W. King, and that

[King and others *vs.* Hamilton and others.]

the said judgment in this cause be, and the same is hereby affirmed as to the other defendants in the court below. And it is further ordered and adjudged by this court, that this cause be, and the same is hereby remanded to the said circuit court, with instructions to cause a survey to be made, to ascertain the number of acres contained in the patent; and that on payment of the balance and interest due according to the settlement made on the sixth of January in the year of our Lord eighteen hundred and twenty-six, and also a further sum for the surplus land above fifteen hundred and thirty-three and one-third acres, according as the quantity shall be found on actual survey, at the same average rate or price, as in the original contract, with the interest therefor from the twenty-fifth of December eighteen hundred and seven; then the said John W. King to be required to make and execute a good and sufficient deed of conveyance, in fee simple, to the complainants in the court below for all the lands contained in the patent to Elisha King, mentioned in the pleadings, and which have not been already conveyed by the deed of Elisha King, bearing date the twenty-second of June eighteen hundred and nine. The money to be paid and the deed executed at such time as the said circuit court shall direct. The injunction to be continued for such time, and under such modification, as shall be judged necessary by the circuit court for the purpose of carrying this decree into effect.