The State of Iowa, Appellee, v. Des Moines & Ft. Dodge Railway Company et al., Appellants.

84 419
123 639

1. **Railroads:** ORDERS OF RAILROAD COMMISSIONERS: ENFORCEMENT. By an act of the legislature certain lands were granted to a railroad company to aid in the construction of a railroad from Keokuk along the line of the Des Moines river to the north line of the state. Subsequently, the said railroad company being in default as to the conditions of said grant, the legislature set apart one hundred thousand acres of said land to be held and applied exclusively to the construction of said road from the city of Des Moines to the town of Ft. Dodge, upon the east side of the Des Moines river. The above grant was accepted by the railroad company, subject to the conditions imposed, and, upon the representations of the company's officers that its road was completed into Ft. Dodge, and that it was running its trains into said town, the lands granted were certified to the company. After the lapse of a few years, the track of said railroad was torn up by the grantee of said company from said town of Ft. Dodge to a point about six miles east, and thereafter its trains into said town were operated over the road of another company under a lease from said road, and no continuous line of road from Des Moines to Ft. Dodge was maintained. Application having been made to the state railroad

commissioners to require the defendants to restore and maintain said road into said town of Ft. Dodge, the commissioners found that, while the restoration of said road into said town would cost sixty-five thousand dollars, and that the annual running expenses would be seven thousand dollars, and that the public could be as well served by the running of through trains over the road leased as aforesaid, yet that the defendants were under legal obligation by the terms of the grant aforesaid to maintain said road into Ft. Dodge as a continuous and unbroken line, and it was so ordered. Upon an application made under chapter 133, of Laws of 1884, for a writ of *mandamus* requiring the defendants to perform the order of the commissioners, *held,* that upon the facts found by the commissioners the order was unreasonable and unjust, and should not be enforced, although the lease under which the defendants' trains were now run into said town of Ft. Dodge was soon to expire, and contained no provision for renewal.

2. ——: ——: - — —. The commissioners having made a further order with relation to the running of the defendants' trains into said town of Ft. Dodge pending the reconstruction of its said road, *held,* that the order being merely incidental to that for the restoration of said road, and to be in effect only pending the work of construction, it would not be enforced.

*Appeal from Webster District Court.*—Hon. S. M. WEAVER, Judge.

SATURDAY, JANUARY 30, 1892.

ACTION in equity to enforce certain orders of the board of railway commissioners for the rebuilding of a line of road into the city of Ft. Dodge, and the operation of trains into the city. The facts and conclusions leading to the judgment of the district court from which the appeal is taken appear in the decree as follows:

"That in the year 1858 the state of Iowa granted to the Keokuk, Fort Des Moines & Minnesota Railway Company certain lands to aid in the construction of a railroad from Keokuk, up and along the valley of the Des Moines river, by way of the city of Des Moines, to the northern line of the state; that the road was to be built in a continuous line above Bentonsport, and the grant was made subject to certain conditions as to the time of completion, etc.; that, these conditions not being complied with, the legislature in 1864 (chapter 108 of

the Tenth General Assembly) passed an act describing specifically how the grant should be earned, and directing the setting apart of one fourth in value of the lands, to be applied in the construction of said railroad from Des Moines to Ft. Dodge; that in 1868, the company being again in default, the legislature (chapter 57 of the Twelfth General Assembly) extended the time to 1870, and set apart one hundred thousand acres of the land to be 'held and applied exclusively' to the construction of the road above Des Moines, and to be certified to the company 'only upon completion of said road into the town of Ft. Dodge, upon the east side of the Des Moines river in 1870, which said company agrees to do;' that there were at a later date negotiations between the railroad company and the citizens of Ft. Dodge, which resulted in an agreement by which the road was to be built into the city on the east side of the river, and thence north, towards its projected northern terminus, in consideration of which tax aid was to be voted, right of way and depot grounds furnished, and a certain amount of stock subscribed; that the tax was voted, and right of way and depot ground, in whole or in part, were furnished to the Ft. Dodge station, but, the road never being extended northward from the city, the tax was not collected; that the city of Ft. Dodge, by ordinance, appropriated and paid fifteen hundred dollars, either directly for the right of way and station grounds in the city, or with that sum reimbursed the citizens who advanced such payment in the first instance; that immediately after the act of 1858 the railway company, by its board of directors, formally accepted the grant, under the conditions named in the act, and in like manner assented to and accepted the provisions of the subsequent acts on that subject; that when the road in its construction had reached the latitude of Ft. Dodge, it could only be brought into that city by deflection from its course to the eastward at nearly right angles, a distance of some six miles; that

at the point where this deflection began a station called 'Tara' was established; that this point was about a mile south of the track of the Iowa Falls & Sioux City Railway, which is built east and west through Ft. Dodge; that, going easterly, the two lines of road converged, and for a distance of three or four miles ran side by side through a ravine to the river, which they crossed into the city, each upon its own bridge; that upon reaching the east bank of the river the 'defendant road ran some half mile further to its own depot; that the road was thus completed in 1870, and the chief engineer and president of the company separately certified to the governor 'that the Des Moines Valley Railroad was completed into Ft. Dodge, on the east side of the Des Moines river,' and was running its trains 'into said town over the bridge and track constructed and owned by said company;' that on these certificates the company demanded and received the one hundred thousand acres of land set apart for this purpose, making an aggregate of about a half million acres received by it under this grant; that three or four years later a mortgage was foreclosed upon the road, and a new organization to acquire and operate the line north of Des Moines was effected; that the new company thus organized is the Des Moines & Ft. Dodge Railway Company, a defendant in this case; that its articles of incorporation, as then adopted and as amended in 1881, declare its object to be 'the acquisition, maintaining and operating of a railroad from the city of Des Moines to some point in the city of Ft. Dodge, and any extension thereof which may hereafter be built or acquired.'

"That thereafter the road was operated by the last-named company until 1887, when it was leased to its co-defendant, the Chicago, Rock Island & Pacific Railway Company; that the terms of this lease provide that lessee shall keep the road in repair, but shall not be held to make any permanent improvements; that beginning in September, 1878, the Des Moines & Ft.

Dodge company tore up and dismantled its track from a point east of Tara, where its right of way intersected that of the Iowa Falls & Sioux City Railway Company, to the east bank of the Des Moines river, and thereafter between these points operated its trains over the said Iowa Falls & Sioux City track, under a lease from the Illinois Central company, then in control of the latter; that this lease expired in 1887, when it was renewed to expire in 1892, and contains no stipulation for extension or renewal; that in 1881 the Des Moines & Ft. Dodge company built a branch or extension of its road from Tara northward to Ruthven, whereupon the station then known as 'Tara' was abandoned, and a new one by that name established at the junction with the track of the Iowa Falls & Sioux City road; that, soon after this junction was effected, the remainder of the track between the old station of Tara and the portion dismantled in 1878 was also abandoned, since which the defendants have used the Iowa Falls & Sioux City track for all business between said junction and the east bank of the Des Moines river, a distance of nearly six miles; that for some time after the Chicago, Rock Island & Pacific Railway Company took charge of the road, trains continued to be run and operated between Des Moines and Ft. Dodge without break or transfer at Tara; that now all trains are operated between Des Moines and Ruthven as the 'through' or 'main' line, and communication is kept up with Ft. Dodge only by a local train plying between that town and Tara over the leased track; that this necessitates the transfer of all Ft. Dodge passengers, and all freight in less than car-load quantities, at the junction; that, since the building of the Minneapolis & St. Louis south through Ft. Dodge to a junction, with the defendant road at Angus, and the building of the Tara extension northward to Ruthven, there has been wanting that active effort on the part of the defendant to compete for and accommodate business between Ft. Dodge and points

beyond Angus on the south and Ruthven on the north, and that for a time there was an effort made by defendants' officers and agents to divert such business to the Minneapolis & St. Louis route.

"That since 1881 the train service over the defendant road has been such that the people of Ft. Dodge very generally feel that they have been deprived of benefits and advantages which they have a right to expect and demand under the circumstances; that in August, 1888, this dissatisfaction culminated in the lodgment of a complaint before the railway commission, asking an order directing the defendant to rebuild and restore its track, and to reform its train service for Ft. Dodge; that upon this complaint the commission, on May 3, 1889, made and entered the following order: 'This case coming up for hearing on an application for an order to enforce the finding of the commissioners in the original hearing, the parties hereto being represented by counsel, it is ordered and adjudged that the defendant the Des Moines & Ft. Dodge Railway Company rebuild and restore its road between Tara station and Ft. Dodge, by restoring the road-bed, replacing the bridges, and relaying its tracks in a proper manner; that said defendant enter upon the work of construction of said portion of its road not later than June 15, 1889, and complete the same by the first day of November following; that, pending the completion of such work, the respondent, the Chicago, Rock Island & Pacific Railway Company, lessee of the Des Moines & Ft. Dodge Railroad, be required and directed to operate one passenger train a day each way between Ft. Dodge and Des Moines, and one freight train, with passenger accommodations, a day each way between Ft. Dodge and Des Moines, and that in the operation of such trains that the time-tables thereof be so adjusted as to best accommodate the business of the entire line and all the stations thereon; that, defendants having refused to obey the order, this suit was instituted by

the attorney general, in the name of the state, to enforce compliance.

"And the court finds that the board of railroad commissioners had jurisdiction upon said complaint to determine whether the defendants are in duty bound to restore and maintain their road into Ft. Dodge, as a question involving alleged violation of charter and statute obligations affecting public right; that the defendant, the Des Moines & Ft. Dodge Railway Company, is in duty bound to maintain its road into Ft. Dodge as a continuous, unbroken line by obligations of contract as well as by the ordinary obligations of charter; that the order of the board of railroad commissioners which is above set out is reasonable and just, and that the defendants in refusing compliance therewith are failing in and omitting the performance of public duties and obligations resting upon them; that said order is sufficiently definite and certain to entitle plaintiff to invoke the powers of the court of equity for its enforcement; that the proceeding before the railroad commission was commenced within ten years from the first abandonment of the road; that the state of Iowa is the real party in interest as plaintiff, and is not barred or estopped by the lapse of time since the road was abandoned to bring this proceeding, and the statute of limitations does not apply to this action; that plaintiff has not been guilty of laches such as will estop it from maintaining this action.

"It is therefore hereby considered, ordered and adjudged by the court that the defendant, the Des Moines & Ft. Dodge Railway Company, rebuild and restore its road between Tara station and Ft. Dodge; that defendant may elect whether it will rebuild upon the old road-bed, either in whole or in part; also whether it will construct the restored line from the present station of Tara junction, or from any convenient point south of said junction; that, whatever point may be selected as the place of divergence towards the

city of Ft. Dodge, the tracks of the present line and of
the restored line shall be so united as together to form
a continuous and unbroken railroad between Des
Moines and Ft. Dodge, necessitating no change or
transfer of passengers or freight; that, subject to the
requirement that the restored road shall be as well
built and of equally as good material as the rest of
defendant's line on either side thereof, defendant may
exercise its own option in the choice of material and
manner of construction; that, in strength and safety,
the bridges shall comply with the standards recognized
by skilled engineers, as sufficient for the purpose for
which they are required, but the material, whether
wood, iron or stone, and the style or model to be
adopted, shall be at defendant's option; that the work
of restoration shall be completed on or before August
15, 1892. And it is further considered, ordered,
adjudged and decreed by the court that the defendant,
the Chicago, Rock Island & Pacific Railway Company,
operate its trains as follows:   Beginning within thirty
days from this date, and continuing so long as it shall
remain in the control and operation of the Des Moines
& Ft. Dodge Railway Company's road, or until the
further order of the railroad commissioners, to-wit:   It
shall operate and run daily (Sundays excepted) one
passenger train each way, and one freight train, with
ordinary passenger accommodations, each way between
Des Moines and Ft. Dodge, without break or transfer
at Tara.   The leaving time of the two through trains
departing from Ft. Dodge shall not be less than three
hours apart, and the time of arrival of the through trains
from Des Moines shall not be less than three hours apart;
subject to these restrictions, the time-table may be
arranged by the said defendant in such manner as in its
judgment will best conduce to the prompt and efficient
transaction of the business of the road.   The order
above made shall not be construed to forbid the com-
bining of the cars from the south-bound trains from

Ruthven and Ft. Dodge into a single train at Tara, for the remainder of the trip to Des Moines, nor to forbid the separation at Tara of trains from Des Moines into sections for Ft. Dodge and Ruthven, respectively. Such arrangement shall not, however, be allowed to cause any unreasonable or unnecessary delay of passengers or freight. It is further ordered, adjudged and decreed by the court that a peremptory writ of *mandamus*, or mandatory writ of injunction, issue to the defendants as prayed in the petition, and in conformity with this decree.''

The defendant companies each appealed from the judgment thus entered against it.

*T. S. Wright* and *John F. Duncombe,* for appellants.

*John Y. Stone,* Attorney General, *Healey & Healey, R. M. Wright* and *Frank Farrell,* for the State.

Granger, J.—I. The consideration of the case involves findings of fact as well as the determination of questions of law. It is important to have in mind the precise character of the litigation before us, and the legislation by which it is authorized. The orders of the railway commissioners which this action is brought to enforce, are two: (1) That the Des Moines & Ft. Dodge Railway Company shall rebuild and restore its road between Tara station and Ft. Dodge;

1. Railroads: orders of railroad commissioners: enforcement.

and (2) that the Chicago, Rock Island and Pacific Railway Company shall, pending the completion of the work by the Des Moines & Ft. Dodge company, operate trains as directed. The record presents separate questions as to the validity of these orders, and that as to the rebuilding of the road will be noticed first.

The district court found ''that the order of the board of railroad commissioners * * * is reasonable and just, and that the defendants in refusing compliance therewith are failing in and omitting the performance of public

duties and obligations resting upon them." The act
of the legislature giving to the court "power to enforce"
such orders is chapter 133 of the Laws of 1884, and it
provides: "If the court shall find that such rule,
regulation or order is reasonable and just, and that in
refusing compliance therewith said railway company is
failing and omitting the performance of any public
duty or obligation, the court shall declare a mandatory
and perpetual injunction, compelling obedience to and
compliance with such rule, order or regulation, * * *
and may grant such other relief as may be deemed just
and proper." The act also provides that the proceed-
ing for the enforcement of such order "shall be by
equitable action, in the name of the state of Iowa, and
shall be instituted by the attorney general whenever
advised by the board of railroad commissioners that
any railway corporation * * * is violating and refus-
ing to comply with any rule, order or regulation made
by such board," etc.

It is insisted by the appellants that the finding of
the district court that the order for the rebuilding of the
road is reasonable and just cannot be sustained from
the record, but that, on the contrary, it appears there-
from that such order is unreasonable and unjust. The
statute clearly contemplates that only such orders as
are reasonable and just shall be enforced. It does not
contemplate that in all cases the reasonableness and
justness of such orders should be found by judicial
determination of the courts, but only such as are
violated, and then at the instance of the commissioners.
Thus, if the commissioners refused to make an order, or
when an order is made by them and observed by the
company, its reasonableness or justness cannot be made
a matter of investigation by the courts. It thus quite
conclusively appears that, in so far as the public are
concerned, the judgment of the commissioners is con-
clusive as to orders and regulations. This thought as to
the legal significance of the statute is of force in con-

nection with the findings of fact by the commissioners, which we think to be of great, if not of controlling, importance on this branch of the case. They find that the cost of rebuilding the road will be about sixty-five thousand dollars, and that of maintaining it thereafter about seven thousand dollars per annum, and say that it is very considerable compared with the traffic over this piece of line. They further say: "The leased road from Ft. Dodge to Tara may be so operated that the advantages, so far as train services are concerned, that would accrue to Ft. Dodge would be as fully realized as if this part of the track was rebuilt on its own line. * * * The rebuilding of the six miles from Tara to Ft. Dodge, while we think it can be legally required, as before stated, would be a burden on the railroad company, without corresponding benefits to the citizens of Ft. Dodge, provided, always, that adequate train service is afforded over the leased line, which can apparently be done, under the terms of the lease."

So far, then, as the facts are concerned the commissioners find that the public may be as advantageously served by a train service over the leased line as it would be by a service over the line if rebuilt, and in this finding, from our examination of the record, we fully concur. If, upon the facts thus found by the commissioners, they had refused the application for an order to rebuild the line of road, because to so order would have been unreasonable or unjust, the law would not permit the court to question the correctness of such a finding of fact, nor to disturb the order based thereon. But the law would permit the court to, in effect, refuse an order to rebuild by refusing to enforce it, if in its judgment the order was unreasonable or unjust; and hence to enforce such an order by a decree of the court, the court and the commissioners should concur in a finding of such facts; for it would indeed be a strange state of the law were we to hold

that, without such facts, the commissioners could make the order, but that the courts, because of the absence of such facts, should refuse to enforce it.

Looking again to the record of the commissioners, and we find that the order for rebuilding the road is based entirely on a naked legal obligation of the company to operate its trains on its own line, rather than a leased one; for they say: "The Des Moines & Ft. Dodge was organized, among other things, to maintain and operate, not to lease, a line of road from Des Moines to Ft. Dodge. It does not seem to the commissioners that the leasing of part of the line, and abandoning their own line, is compliance with the laws of 1868, or with the purpose of the organization; and on this proposition they distinctly hold that this proposition of complaint is sustained, and that the defendant, the Des Moines & Ft. Dodge railroad is legally bound to maintain and operate a line of road lying between Ft. Dodge and Tara."

It will clearly be seen that the commissioners have based their conclusion in granting the order entirely on a belief that the road must be maintained as to trackage, for the operation of trains, as it must have been to entitle the company to the grant of lands. But we do not think that such a conclusion necessarily follows. Conceding the rule, that to obtain the lands the company must both construct the road and operate its trains thereon into Ft. Dodge, it does not follow that there may not afterwards be such a change of circumstances that equity would not compel the maintenance of the particular track or the rebuilding of it if abandoned. So long as the citizens of Ft. Dodge, or perhaps the public, receive a train service between Des Moines and Ft. Dodge with the advantages it would have over the line if rebuilt, what are the grounds of complaint? The company or its lessee is giving the train service to which the public is entitled, or maintains the facilities for giving such a service, as

·fully as it could do with the road as originally built; ·and, in legal contemplation, it is maintaining and oper- ·ating its line between the two cities. With the line rebuilt, the sufficiency of the service would be. a ·question for the commissioners, and we fail to see wherein it is less so with the leased line on which it now operates its trains under the terms of its lease, there being no limitation as to the number of such trains. What, then, are the results to follow the ·rebuilding of the road if we enforce the order? It is alone the expenditure of sixty-five thousand dollars, and an additional expenditure of seven thousand ·dollars annually for its maintenance. With this ·expenditure, as both the commissioners and ourselves find, no advantage would result to the citizens of Ft. Dodge. The law in terms makes this proceeding ·an equitable one, and the reasonableness or justness of ·an order based on such a state of facts is to be deter- mined from equitable considerations. If the order is ·enforced, it is, as to its legal bearings, the equivalent of a decree for specific performance of a contract or ·obligation, and equity does not lend its aid to enforce ·such a performance where the party seeking enforce- ·ment is not injured or prejudiced by the neglect. It is under such circumstances that specific performance becomes oppressive, and is in the proper exercise of a ·discretionary power refused by the courts.

A case quite in point is that of *Chicago & A. Ry. Co. v. Schoeneman*, 90 Ill. 258, where this language is used: "Conceding the abstract right of the appellees, it does not follow that a specific performance must be decreed. It is a settled principle that a specific per- formance of a contract is not to be decreed as a matter of course because a legal contract is shown to exist, but it rests entirely in the discretion of the court, upon a view of all the circumstances." The case cites *Frisby v. Ballance*, 4 Scam. 287; *McCabe v. Crosier*, 69 Ill. 501; *Seymour v. Delaney*, 6 Johns. Ch. 222. It

is further said in the opinion: "The effect of a
specific performance, so far as now seen, would be to
impose upon the appellants a large burden of expense,
without any practical benefit to the appellee.  It
resting in a sound judicial discretion, it strikes us as a
proper exercise of discretion for a court of equity to
refuse its interference by way of a decree of specific
performance to secure such a result."  The supreme
court of the United States in *Willard v. Taylor*, 8
Wall. 557, has said: "In general it may be said that
the specific relief will be granted when it is apparent,
from a view of all the circumstances of the particular
case, that it will subserve the ends of justice; and that
it will be withheld when, from a like view, it appears
that it will produce hardship or injustice to either of
the parties.  It is not sufficient, as shown by the cases
cited, to call forth the equitable interposition of the
court, that the legal obligation under the contract to
do the specific thing desired may be perfect."  Very
many authorities are to the same effect, and we know
of none announcing a contrary doctrine.

The facts, then, are that a line of road is being
maintained from Des Moines to Ft. Dodge, and much
of the way between Tara junction and Ft. Dodge, but
a few feet from the old line, with such facilities for an
adequate train service as could be required over the
line sought to be replaced; and we think that so long
as the defendants preserve such facilities, and in a way
to be as amenable to the laws of the state for the regu-
lation of its service as the line if restored would be, to
require an expenditure of sixty-five thousand dollars to
replace the line, without a practical advantage to any
one, would be unreasonable and unjust, and that the
law in a proceeding of this character does not demand
it.  Nothing in the original undertaking to construct
the road and receive the lands and other aid indicates
in any way that the company would not afterwards
have the right to make such changes as its interest

might dictate, by placing its train service for some parts of the way on a line either purchased or leased, provided always that such a service is maintained as was contemplated when its obligation to the public was assumed.

These considerations are with a view of the law that the defendant company is not released from an obligation to maintain a road and operate trains, in conformity to its original undertaking, between Des Moines and Ft. Dodge, and we think the present controversy is more over the manner than the fact of its doing so. If, instead of leasing from the Illinois Central company trackage for its trains, the defendant company had maintained the line in question, and had made a like lease to the Illinois Central, so that the two companies would have operated this abandoned line as they do now the Illinois Central line, it would not be questioned but that it was maintaining its line in harmony with its obligation. Under such a state of facts, the sufficiency of the train service would be a question for the commissioners. The legal situation would hardly be different if the defendant company had, instead of leasing, purchased from the Illinois Central this short line, but a few feet distant most of the way from its own, and then given to the Illinois Central company a trackage lease like the one now held by the defendant company, provided in so doing it retained such a use of the line as would permit a train service in accord with its obligation to the public. The present situation as to results to the public is not different from the supposed cases. If we look to the substance rather than the shadow, or if we have in view the fruits that the public may properly derive from its undertaking with the defendant company rather than the imposition of a useless burden, we have the key to an equitable solution of the question before us. Equity will, with a jealous care, protect the former. It will

turn aside as unworthy of its protection the applicant with no other claim than the latter.

Some importance is attached to the fact that the lease with the Illinois Central Railway Company will expire in 1892, and there is no assurance of a continued service beyond that time. Inasmuch as a line for the operation of trains has been so far supplied, we do not think an order to rebuild could be justified by an assumption that it will not be supplied in the future. We may rather assume that, if other facilities fail, a line will be constructed. Apprehensions are also expressed that a delay may involve a question of the action to restore the road being barred by the statute of limitations. As we hold that no cause of action has yet arisen, because of a line being in effect maintained, there would seem no diffculty in that respect.

II. The order of the commissioners also required the Chicago, Rock Island & Pacific Railway Company, as lessee of the Des Moines & Ft. Dodge Railway Company, "to operate one passenger train a day each way between Ft. Dodge and Des Moines, and one freight train a day with passenger accommodations, each way from Ft. Dodge to Des Moines; and that in the operation of such train the time-table thereof be so adjusted as to best accommodate the business of the whole line and all stations thereon." The order of the commissioners was that it should be observed "pending the completion" of the work of rebuilding the line, which was ordered to be completed by November 1, 1889. The decree of the district court was entered in March, 1890, and in some quite important particulars modified the order of the commissioners to make it more definite. The authority of the district court to make such changes is strenuously denied by the appellants, and the correctness of the proposition thus tendered involves the determination of a question of much difficulty, in view of the different provisions of the statute on the

subject of railroad control or regulation; and, inasmuch as the order as to the operation of trains appears to be incidental to that for the construction of the line, and was by the commissioners' order to be, in effect, only during the work of construction, which, under the judgment of this court, is not to occur, we think this order should also be treated as of no force, and the matter of future train service on the line be left to further inquiry and direction by the commissioners.

The judgment of the district court is REVERSED.