R. K. KING, Appellant, v. JOHN RAAB AND JOHANNA RAAB.

**Specific Performance:** OPTION TO PURCHASE BY LESSEE. A stipulation in a lease providing that the lessee may purchase the premises at any time during the term and defining the terms of purchase is a continuing offer of sale, and notice of election to buy is an acceptance and will complete a contract of sale as of the date of such notice.

**Option to Purchase Land:** SUBSEQUENT CHANGE IN PROPERTY. Where a lease contains an option of sale during the term at a specified sum, upon payment of which the lessor will convey, a subsequent change in the value without fault of either party will excuse neither from compliance with the contract.

Specific Performance: CONDITIONS FOR GRANTING SAME. Where a lease for a term of years provided the terms upon which the lessee might purchase at any time during the term, and prior to an exercise of the option the city caused the street in front of the property to be paved at the cost of the abutting owner, which was paid in part by the lessor, a decree requiring the lessee to reimburse the lessor and to assume the balance of the cost as a condition precedent to specific performance was warranted.

Option to Purchase: IMPROVEMENTS PRIOR TO ELECTION. A lessee with an option to purchase cannot complain that the lessor waived irregularities in the letting of a contract under which improvements were made prior to his election to purchase.

*Appeal from Blackhawk District Court.*—HON. A. S. BLAIR, Judge.

SATURDAY, APRIL 16, 1904.

JOHN Raab leased the west half of lots 1 and 2 in block 8 in Garrison and Dean's Addition in Cedar Falls to the Cedar Falls Brick & Tile Company for the term of five years from January 1, 1897, at the monthly rental of $12. Contained in the lease was an option in these words: "It is further agreed that said Cedar Falls Brick & Tile Co. shall have the privilege of buying said premises at any time during said term for the sum of sixteen hundred and fifty dollars, and said first party, upon payment of said sum, hereby agrees to convey said premises by warranty deed with the usual covenants, to said second party or its assigns." In 1898 the city council of Cedar Falls caused the street on which the lots abut to be paved at a cost of $321.60 for which a certificate was issued, a part of which has been paid by the defendant. This lease, with all benefits thereunder, was assigned to the plaintiff May 10, 1899, and on the 4th day of April, 1900, he served on Raab a written notice of his election to purchase by virtue of the option, tendering the amount named in the contract and demanding a deed. As the defendant refused to comply, this action for specific performance was brought shortly afterwards. The district court entered a decree as prayed, with the additional requirements that plaintiff reim-

burse defendant for the amount paid on the paving certificate and assume that part unpaid. The plaintiff appeals.— *Affirmed.*

*William H. Merner* for appellant.

*J. C. Scott, V. Lyngby* and *Henningway & Martin* for appellees.

Ladd, J.—It must be assumed at the outset that plaintiff is entitled to a specific performance of the contract. The district court so decreed, and, as defendants have not appealed, our decision cannot be any less favorable to them. *Smith v. King,* 88 Iowa, 257; *West v. West,* 90 Iowa, 41; *McWhirter v. Crawford,* 104 Iowa, 550. For this ˙reason all the defenses interposed and somewhat elaborately argued are to be disregarded, save that with relation to the assessment of the cost of paving the street on which the lots abutted.

The lease containing the option permitting the purchase of the land at any time during the term of five years took effect January 1, 1897, the paving was done at a cost of $321.60 in 1898, and the option exercised in 1900. This option contained in the lease was equivalent to a continuing offer to sell, to which the notice of the election to purchase was an acceptance, and the two constituted a completed contract of sale as of the date of such notice. *Willard v. Tayloe,* 8 Wall., 557 (19 L. Ed. 501).

1. OPTION to purchase by lessee.

The adequacy of the price when the lease was executed is not questioned. And the authorities cited by both parties are to the effect that any change in the value of the property or the price occurring subsequently without fault of either party will excuse neither from compliance with the contract. Thus, in *Falls v. Carpenter,* 1 Devereux & Battle Eg., N. C., 237 (28 Am. Dec. 613), with reference to increase in value, the court said: "The thing contracted for is in equity considered the purchaser's from the time of the contract, and stands as security, only, to the seller. Ordinarily, therefore, advantages or disadvantages arising subsequently, either from un-

2. OPTION to purchase land subsequent change in property.

foreseen accidents, or from contingencies on which the value
was known at the time to be dependent, cannot be a cause for
refusing to enforce an executory agreement more than for an-
nulling an executed conveyance." And it was observed by
Field, Jr., in *Willard v. Tayloe, supra,* that: "The question
in such cases always is, was the contract, at the time it was
made, a reasonable and fair one? If such was the fact, the
parties are considered as having taken upon themselves the
risk of subsequent fluctations in value, and such fluctuations
are not allowed to prevent its specific enforcement." In that
case it was held that payment was to be in the currency con-
stituting a legal tender when the contract was entered into,
rather than greenbacks, subsequently made legal tender by an
act of Congress. See, also, *Low v. Treadwell,* 12 Me., 441;
*Young v. Wright,* 4 Wis., 144 (65 Am. Dec. 303); Pomeroy
Specific Performance, sections 195, 322. The same principle
was announced in *Hale v. Wilkinson,* 21 Grat. 75, where the
purchase price stipulated was $6,000 in Confederate cur-
rency. At the time of the tender this was worth but $385 in
currency of the United States. As no delay of the vendee
had exposed the vendor to this collapse in the consideration,
the change in value was held not to afford any defense. But
in neither line of decisions were changes of values occasioned
by the involuntary acts of either party.

Here the improvement of the street was directed by the
town council, and the payment therefor by the owner, in or-
der to protect the property from tax sale, compelled. It was
in the nature of a compulsory improvement of
3. SPECIFIC per-
formance:
conditions for
granting
same.
the premises, and, too, one which the parties
cannot be held to have anticipated in entering
into the agreement. True knowledge of a muni-
cipality's power to pave its streets is to be imputed, but the ex-
ercise of this power in the smaller cities and towns of the
state has been of such rare occurance that parties contracting
for the sale of property abutting on the streets ought not to be
held to have had in mind possible improvements of this char-
acter. As we understand the record, there had been no pav-

ing in Cedar Falls at the time the lease was executed, and this lot abuts on a side street, and not on one of the main thoroughfares. The defendant has been compelled to expend a large sum of money in enhancing the value of this lot. He cannot be said to have contracted with reference to its changed condition, and we think the court was warranted in imposing equitable terms as a condition to specific performance. It is suggested that on the same ground payment made for a sidewalk might be added to the price stated in an option, but ordinarily the cost of such an improvement is not so large that its payment and loss can be said to be a hardship. Moreover, sidewalks, permanent and temporary, are so common that the owner may have been held to have contracted with respect to the possibility of being required to lay them at any time. The right to impose conditions where there has been a change of circumstances for which neither party can be blamed has often been recognized.

In *Willard v. Tayloe, supra*, the owner of property had leased property for ten years with an option to the lessee to purchase at a stated price. A year before the lease expired, but after the Civil War had been in progress some time, the lessee elected to purchase, and tendered the stipulated price in legal tender treasury notes of the United States. The war had the effect of retiring gold and silver coin from general use in commercial transactions, and legal tender notes had become the ordinary medium of exchange, though worth but about fifty cents on the dollar of standard coin. The tender was refused by Tayloe, and thereupon Willard brought suit for specific performance. The treasury notes had by law been made legal tender, and, if Willard had bought the property on a coin basis, upon deferred payments in 1854 his tender of payment in 1864 in treasury notes would have been good, notwithstanding their depreciation. But in the face of the fact that the contract was a legal and valid one, and that the tender of payment would have been deemed good and sufficient in an action at law between the parties, it was held that by reason of the unforeseen change in circumstances,

which made enforcement according to the strict measure of
legal rights a great hardship to the defendant, a court of
equity would order specific performance only upon condition
that the plaintiff would make payment in coin or its equiva-
lent.   In disposing of the case the court said: "In general
it may be said that the specific relief will be granted when it
is apparent from a view of all the circumstances of the par-
ticular case that it will subserve the ends of justice, and that
it will be withheld when, from a like view, it appears that it
will produce hardship or injustice to either of the parties.   It
is not sufficient, as shown by the cases cited to call forth
equitable interposition, that the legal obligation under the
contract to do the specific thing desired may be perfect.   It
must also appear that the specific enforcement will work no
hardship or injustice, for, if that result should follow, the
court would leave the parties to their remedies at law, unless
the granting of the specific relief can be accompanied with
conditions which will obviate that result.   If that result can
be thus accomplished a specific performance will generally, in
such case, be denied conditionally.   It is the advantage of the
court of equity, as observed by Lord Redesdale in *Davis v.
Hone,* 2 Sch. & Lef. 348, that it can modify the demands of
the parties according to justice; and where, as in that case,
it would be inequitable from a change of circumstances to en-
force a contract specifically, it may refuse its decree, unless
the party will consent to a conscientious modification of the
contract, or, what is the same thing, will take a decree upon
a condition of doing or relinquishing certain things to the
other party."   And, referring to decisions mentioned: "It
is true the cases cited in which the discretion of the court is
asserted arose upon contracts in which there existed some in-
equality or unfairness of terms, by reason of which injustice
would have followed a specific performance.   But the same
discretion is exercised where the contract is fair in its terms
if its enforcement from subsequent events, or even from col-
lateral circumstances, work hardship or injustice to either
of the parties."

In *City of London v. Nash Lord Hardwicke* refused to decree specific performance of a legal and valid contract because it would be "attended with great loss and hardship to one of the parties." See, also, *Joynes v. Statham,* 3 Ark. 388; *Underwood v. Hitchcock,* 1 Ves. Sr. 279. In *Godwin v. Collins,* 3 Del. Ch. 189, a decree was refused because of "the gross inequality and improvidence of the contract," which provided for a sale of land on long-deferred payments, without any provisions for their security. In that case and in the learned opinion by Chancellor Kent in *Seymour v. De-lancey,* 6 Johns. Ch. 223, will be found a thorough examination of the equitable remedy which we are considering, with a very general review of the English and American courts, and in both the discretion of the court to refuse a decree of specific enforcement whenever it would operate to produce undue hardship or injury to one of the parties is firmly upheld. Thompson, J., in *Freetly v. Barnhart,* 51 Pa. 281, says specific performance "may be refused, notwithstanding a contract obligation, if there be circumstances rendering it inequitable, and then the party is left to his action at law for damages. * * * It is not with abstract and rigid law that equity deals, but with principles of justice and right which the consciences of men must approve, and may be appealed to to perform." In *Huguenin v. Courtenay,* 21 S. C. 403 (53 Am. Rep. 688), the washing away of the part of the land agreed to be conveyed was held sufficient cause for refusing a specific enforcement in favor of the vendor. In *King v. Hamilton,* 29 U. S. 311 (7 L. Ed. 869), a vendor agreed to sell a certain tract of land described in certain patents. It was a matter of general notoriety that the surveys in that region overran the nominal measurement, and the parties might reasonably be held to have anticipated that this tract would be no exception to that rule. It transpired, however, that the excess in this instance was very large—more than eight hundred acres—and the court refused to specifically enforce the contract except upon conditions, although the sale was of the tract in bulk, and not by the acre. While some ex-

cess was to be expected by the parties, and the contract would have been enforced under ordinary circumstances, it was not reasonable to suppose that such great discrepancy was anticipated, and therefore equity would refuse to order a specific enforcement unless the vendee named pay for the surplus of land at the average rate contemplated by the contract. In *Mansfield v. Sherman,* 81 Me., 365 (17 Atl. Rep. 300), the court said: "However strong, clear, and emphatic the language of the contract, however plain the right at law, if specific performance would for any reason cause a result harsh, inequitable, or contrary to good conscience, the court should refuse a decree, and leave the parties to their remedies at law. In an equity proceeding the plaintiff must do equity, and can obtain only equity." In further support of the general principles involved, see *Clarke v. R. R.,* 18 Barb. 350; *Penrose v. Leeds,* 46 N. J. Eq. 294 (19 Atl. Rep. 134); *Lloyd v. Wheatly,* 55 N. C. 267; *McComas v. Easley,* 21 Grat. 31; *Kimball v. Tooke,* 70 Ill. 564; *Hetfield v. Willey,* 105 Ill. 290; *C. & A. Ry. Co. v. Schoeneman,* 90 Ill. 258; *State v. R. R.,* 84 Iowa, 419, 431; *Hunter v. McDevitt,* (N. D.) 97 N. W. Rep. 869.

II. It appears that for the contract to do the paving one Campbell was the lowest bidder. On the ground of having made some mistake, he refused to enter into a contract in accordance with his bid, and thereupon it was

*t.* OPTION to purchase improvements prior to election.

awarded to the next lowest bidder, Likes Improvement Company, by which the paving was done. Appellant insists that this was illegal. See *Twiss v. Port Huron,* 63 Mich. 528 (30 N. W. Rep 177). We shall not stop to decide the point. For all that appears, Raab knew nothing of it, and, to secure an extension of the time of payment, signed an agreement waiving irregularities. The paving had been done, and doubtless had enhanced the value of the lot to the extent of its cost, even though not so for the uses intended by appellant. It was for the owner to determine whether he would accept the improvement, and pay for it, or go to the expense of an investigation to discover de-

fects in the proceedings of the council, and of a doubtful contest to defeat the assessment; and with his decision, made prior to the election to purchase, and while the property was his own, the holder of a mere option to buy is not in a situation to complain.—AFFIRMED.