CHARLES TUTTLE, Appellant, v. PHILIP KING, Appellee.

VENDOR AND PURCHASER: Rescission by Purchaser—Depreciation in Value. Depreciation in the value of land after the execution of a contract of purchase affords no ground for rescission when the depreciation is due to conditions known to exist at the time of the execution of the contract. So held where the depreciation was due to a threatened change in the course of the Missouri River.

EQUITY: Decree—Decree Nonconformable with Proof—Court-Made Contract. Decrees in equity must conform to the proofs. Equity may not make a new contract for the parties.

PRINCIPLE APPLIED: A purchaser agreed to pay $15,000 for certain lands. Of this amount, $12,500 was to be in the form of a ten-year mortgage. A $6,700 mortgage, on which a balance of $4,000 was due, existed on the land. The vendor was obli-

gated to remove this lien. The vendor conceived the idea of *himself* borrowing the $4,000, and *himself* executing a mortgage on the land therefor, and then inducing the purchaser to assume said $4,000 mortgage and to execute an $8,500 mortgage, instead of one for $12,500. *The purchaser agreed to this scheme,* and executed said $8,500 mortgage and took a deed from the vendor, agreeing to *assume* a $4,000 mortgage. Through some misunderstanding, these instruments were prematurely delivered. Later, the vendor secured a release of the $6,700 mortgage without making the $4,000 loan. In an action by the vendor for specific performance, the court decreed that the *purchaser* should execute to the vendor the $4,000 note and mortgage which the *vendor* had omitted to execute.

*Held*, unauthorized.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

THURSDAY, OCTOBER 18, 1917.

THE contract upon which this suit is based is dated November 17, 1914, and by its terms defendant agreed, in consideration of the payment of $500 cash, $2,000 March 1, 1915, and the execution of a note to plaintiff for $12,500, with interest at six per cent, due in ten years, with optional payments, securing the payment thereof by mortgage upon the northeast quarter of the southeast quarter, and the southeast quarter of the northeast quarter, and the east half of the west half of the northeast quarter, all in Section 29–83–45, Monona County, Iowa, to convey to plaintiff the above described premises by warranty deed, and to furnish him an abstract showing lawful title of record, free from incumbrance, except the said mortgage of $12,500, and, in the event defendant was unable to furnish abstract showing title as stated, he was to have a reasonable time after March 1, 1915, in which to perfect the same. At the time of the execution of the contract, there was of record a mortgage upon the premises for $6,700, upon which there was a balance due of approximately $4,000. Defendant was unable to procure a release of this mortgage prior to March 1, 1915,

whereupon he requested plaintiff to execute to him a note for $8,500, securing the payment thereof by mortgage upon the above premises, and to permit defendant to procure a $4,000 loan, secured by second mortgage, upon the premises, due in ten years, and that plaintiff assume the payment thereof as part of the purchase price under the contract. Deed was accordingly executed by defendant, conveying the premises to plaintiff, subject to a mortgage of $4,000, which plaintiff assumed and agreed to pay. The executed papers were left with the agent of defendant, which agent, some months thereafter, under the belief that the $6,700 mortgage had been released, filed the deed and $8,500 mortgage for record. On June 3, 1915, defendant executed a mortgage for $4,000, and on the same date, filed same for record in the office of the recorder of Monona County. This mortgage was, however, released December 14, 1915, but the $6,700 mortgage had not at that time been released, but proceedings to foreclose the same had been, or were, begun shortly thereafter. These proceedings were abandoned and the mortgage released about the middle of February, 1916. On October 22, 1915, plaintiff filed a petition asking specific performance of the terms of the contract. No appearance was made in this suit on behalf of defendant until March 10, 1916, but the cause had been continued from time to time by agreement of the parties, for the purpose of enabling defendant to carry out his part of the contract. On March 7, 1916, plaintiff filed an amendment to his petition, averring that he purchased the land for purposes of speculation; that he had been unable to sell the same on account of the condition of the title; that the land, which lies adjacent to the Missouri River, was being threatened thereby and was greatly depreciating in value; demanding repayment of the $2,500 paid to defendant and judgment for damages on account of the depreciation in the value of the land. On the 10th of the same month, de-

fendant filed answer and cross-petition, averring his ability and readiness to perform the contract and praying specific performance thereof, and at the same time defendant filed a motion for continuance, which, over the objections of plaintiff, was sustained. On May 11th following, plaintiff filed a further amendment to his petition, alleging that certain temporary buildings located on the premises at the time of the purchase belonged to and were removed by the tenant who then occupied the same, and praying judgment for the value thereof in the sum of $250. The lease which defendant had with the tenant upon the premises at the time the contract was executed was duly assigned to plaintiff, to whom the rent for 1915 was paid. On March 1, 1916, plaintiff moved upon the farm in question, and at the time of the trial,—the exact date of which does not appear in the record, but the court announced its decision June 3, 1916,—he had planted a crop of corn and prepared the rest of the cultivatable land for crops. It also appears that he had sowed some wheat upon the farm in the fall of 1915. On August 15, 1916, a decree was filed in the lower court awarding plaintiff damages in the sum of $250 for the buildings removed by the tenant, and denying the prayer of his petition for rescission and cancellation of the contract. The decree further found that defendant had complied with all the terms and conditions of the contract on his part, and that plaintiff was indebted to defendant in the sum of $4,000 on the purchase price of the premises, and decreed that the $250 be allowed as damages and be deducted therefrom, and that plaintiff, within ten days, execute to defendant a note for $3,750 and mortgage signed by himself and wife to secure the payment thereof, and that, upon his failure to do so, the clerk, who was appointed a commissioner for that purpose, was to execute a note and mortgage in the name of plaintiff and his wife, due in ten years from March 1, 1915, with interest at six per cent, and

deliver the same to defendant. Plantiff refused to comply with this provision of the decree, whereupon the note and mortgage were executed by the clerk. Plaintiff appeals.— *Reversed and remanded.*

*Prichard & Prichard,* for appellant.

*B. Radcliffe* and *C. E. Cooper,* for appellee.

STEVENS, J.—I. We will first consider the question of plaintiff's right to rescind the contract on March 7, 1916, the date on which he filed an amendment to his petition praying such relief. It will be observed

1. VENDOR AND PURCHASER: rescission by purchaser: depreciation in value.

from the foregoing statement that, at the time of filing said amendment, defendant had perfected the title to said premises by causing all mortgage liens, except the mortgage for $8,500 executed by plaintiff to defendant, to be released of record, so that no question relating to title was at that time involved, and plaintiff was not in a position to demand rescission on account of previous defects existing therein. Until the filing of the amendment praying rescission, the suit commenced by him for specific performance of the contract was pending.

It is a general rule that depreciation in the value of real property will not afford a ground of rescission or deprive the party seeking the same of the right to a decree compelling specific performance, where the alleged depreciation is due to conditions existing at the time of the execution of the contract, and that were then known to the parties. The possibility of a change in the action of the Missouri River was well known to plaintiff at the time he entered into the contract, and depreciation of the land on account thereof does not entitle plaintiff to a rescission of the contract. *Falls v. Carpenter,* 21 N. C. 237; *King v. Raab,* 123 Iowa 632.

It is a general rule that depreciation in the value of land after the execution of a contract will not alone defeat an action for specific performance thereof. *Nims v. Vaughn,* 40 Mich. 356; *Keim v. Lindley,* (N. J.) 30 Atl. 1063; *Peterson v. Chase,* 115 Wis. 239.

II.   Plaintiff by amendment to his petition, also asks damages for the value of the temporary buildings removed by the tenant, and because of his inability to sell the premises on account of defendant's failure to perfect the title thereto, and for the difference in the market value March 1, 1915, and at the time of filing the amendment. What is said above disposes of plaintiff's claim for damages on account of the depreciation in the land, and the court awarded him damages in full for the buildings removed by the tenant.

III.   The only remaining question for our consideration arises on defendant's cross-petition, praying specific performance of the contract.   Plaintiff is

**2. EQUITY: decree: decree nonconformable with proof: court-made contract.** not shown to have at any time been in default in carrying out his part of the written contract. All of the difficulty and delay in consummating the contract prior to the filing of plaintiff's amendment to his petition asking rescission of the contract was due to the default and inability of defendant to perfect the title to the land. He was unable to procure a release of the $6,700 mortgage prior to the time fixed by the contract for the closing of the sale; and, for the purpose of enabling him to complete the sale, plaintiff orally consented to execute a mortgage for $8,500 and assume and agree to pay a $4,000 mortgage upon the land, to be executed by defendant, both notes to mature March 1, 1925.   Defendant executed a mortgage for $4,000, which was placed of record, but it was claimed by him upon the trial that no note was ever given, and he was unable to procure a ten-year loan on that amount, and the note de-

scribed in the mortgage was to become due in five years instead of ten. This was, of course, contrary to the terms of the contract, and plaintiff was not bound to accept that arrangement, and refused to do so.

In February preceding the trial, defendant finally perfected the title to the land and caused all liens and encumbrances, except the $8,500 mortgage executed to him by plaintiff, to be released of record. Defendant's prayer for specific performance is not of the written contract as originally executed, nor as modified by concessions upon the part of the plaintiff, or oral agreement between the parties. Plaintiff at no time agreed to execute a $4,000 mortgage. The deed executed by defendant and delivered to him contained a provision for the assumption by plaintiff of a $4,000 mortgage to be executed by the defendant, which plaintiff agreed to pay. Plaintiff cannot be required to execute a note and mortgage upon the land to secure the payment thereof for $4,000, for the reason that he has neither in writing nor orally bound himself to do so. The written contract did not make time the essence thereof, but provided that defendant should furnish an abstract showing title as therein designated, within a reasonable time after March 1, 1915. The record shows that both parties were doubtless eager to consummate the sale, but, on account of defendant's inability to comply with his agreements, but little progress was made toward a final settlement. Concessions were made to defendant by plaintiff; his action for specific performance was continued from time to time without appearance of record by defendant; plaintiff received an assignment of the lease for the cropping season of 1915, received the rent for that year, planted a portion of the land to wheat in the fall of 1915, moved thereon about March 1, 1916, and at the time of the trial, was in possession of the farm and had planted about ninety acres to corn, and had the rest of the tillable land prepared for

cropping.  The title at this time was perfect in the plaintiff, and nothing remained to conclude the sale except the payment of the balance of $4,000 due on the purchase price.

While defendant is not entitled to a decree requiring plaintiff to execute a note for $4,000 and secure the payment thereof by mortgage upon the premises in question, nevertheless, considering the concessions granted defendant, plaintiff's acquiescence in the delay, and all other facts and circumstances surrounding the transaction, and the position in which the parties have voluntarily placed themselves, we are reluctant to reverse this case without remanding the same for further proceedings in the court below, in harmony with the views herein expressed.

The note executed by the clerk of the district court as a commissioner appointed by the court should be canceled and the mortgage released, and plaintiff given an opportunity to execute a note and mortgage for $4,000, due March 1, 1925, or, at his option, to have a cancellation of the $8,500 mortgage, and permission to execute a new note and mortgage for $12,500 due March 1, 1925, the amount found due plaintiff as damages to be paid by defendant, upon execution of note and mortgage.  It will be observed that plaintiff's wife did not sign the contract, nor is she made a party to this suit.  Should plaintiff fail or refuse to execute note and mortgage in accordance with an election to be made by him, as above suggested, within a reasonable time to be fixed by the court, plaintiff's petition and defendant's cross-petition shall be dismissed by the court, and defendant left to pursue any other remedy he may have to enforce payment of the balance due on the purchase price of said land, the court to make such decree or apportionment of the costs as shall appear to be just and equitable.—*Reversed and remanded.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.