## JERSEY CITY GAS-LIGHT CO. *v.* UNITED GAS IMP. CO.

*(Circuit Court, D. New Jersey.  March 24, 1891.)*

**CORPORATIONS—LICENSE—TAX ON DIVIDENDS—CONSTRUCTION OF LEASE.**

> The provision of Act N. J. April 18, 1884, that every gas company shall pay an annual tax of one-half of 1 per cent. upon its gross receipts, and 5 per centum upon dividends earned and declared in excess of 4 per centum, by way of a license for the right to continue and act as a corporate association, and for its failure to do so shall be restrained from the exercise of its corporate franchise until the payment is made, imposes a license fee for the exercise of its corporate franchise, and not a tax upon its property, within the terms of a lease whereby one gas company granted to another its works and property for the term of 20 years, at a certain rental, with the condition that the lessee should pay "all assessments and taxes lawfully assessed or levied upon the real or personal property, franchises, capital stock, or gross receipts" of the lessor during the term.

At Law.

*Wallis, Edwards & Bumsted,* for plaintiff.

*William E. Potter* and *Joseph D. Bedle,* for defendant.

GREEN, J.  This is an action of contract brought by the plaintiff, the Jersey City Gas-Light Company, against the defendant, the United Gas Improvement Company, to recover certain sums of money, with arrears of interest, alleged to be due from the defendant, and payable to the plaintiff, under and by virtue of the terms and conditions of a certain contract or lease.  The cause was tried before the court without a jury, under a stipulation in writing to that effect.  Practically there was no dispute as to the facts, the real question at issue being the true construction of a condition in the lease.  The plaintiff is a corporation existing under and by virtue of an act of incorporation of the state of New Jersey, approved February, 1849.  By this act it was authorized and empowered to manufacture, make, and sell gas, for the purpose of lighting the streets, buildings, manufactories, and other places situate in Jersey City and vicinity.  The defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Pennsylvania. In December, 1884, the plaintiff and defendant entered into a contract, by which the former leased to the latter for a term of 20 years its works and property in Jersey City, at an annual money rental therein reserved. This contract or lease contained this condition:

"The party of the second part [to-wit, the defendant herein] shall also pay all assessments and taxes which may be lawfully assessed or levied upon the real and personal property, franchises, capital stock, or gross receipts of the party of the first part during the continuance of this agreement."

The controversy between the parties litigant has reference solely to this condition or provision of the contract.  It is admitted that, pursuant to its terms, the defendant has paid all assessments and taxes levied upon the real and personal property, the capital stock, and the gross receipts of the plaintiff corporation.  But a certain assessment or tax has been imposed and levied by the legislature of New Jersey upon the plaintiff by virtue of an act entitled "An act to provide for the imposition of state

taxes upon certain corporations, and for the collection thereof," approved April 18, 1884, which the defendant has refused to pay, although requested so to do, alleging as excuse for such refusal that the tax thus assessed and levied does not fall within the terms of the contract; in other words, that this tax, imposed by virtue of the act referred to, is not an assessment or a tax either upon the real and personal property, franchises, capital stock, or gross receipts of the plaintiff, and hence the defendant is under no obligation to pay it. On the other hand, the contention of the plaintiff is that the tax thus assessed and imposed is clearly a tax upon its franchises, and the defendant, by the strictest construction of the contract, is certainly liable to pay it. This contention practically embraces the whole controversy. The act in question is entitled "An act for the imposition of state taxes upon certain corporations, and for the collection thereof." In its first section it provided that—

"Every telegraph, telephone, cable, or electric light company, every express company not owned by a railroad company, and otherwise taxed, every gas company, palace or parlor or sleeping car company, and every oil or pipe line company, and every fire, life, marine, or accident insurance company, doing business in this state, except mutual fire insurance companies which do not issue policies on the stock plan, shall pay an annual tax, for the use of the state, by way of license for its corporate franchise, as thereinafter mentioned."

The second section provides that it shall be the duty of the president, treasurer, or other proper officer of every corporation specified in the first section to make report to the state board of assessors, stating specifically the following particulars, namely: Each gas company shall state the gross amount of its receipts for business done in the state during the year preceding the 1st day of February in each and every year, and the amount of dividends earned or declared for the same period. The fourth section provides that each gas company shall pay to the state a tax at the rate of one-half of 1 per centum upon the gross receipts so returned or ascertained, and 5 per centum upon the dividends of said company in excess of 4 per centum so earned or declared. The sixth section declares that this tax shall be a debt due from the company to the state, for which an action at law may be maintained, and the seventh section provides for the restraining, by injunction, of delinquent corporations from the exercise of any franchise or the transaction of any business within the state until payment of tax be made. The other sections of the act are without importance in this cause. Provision is thus made for the assessment and collection of an annual tax, for the use of the state, from every company engaged in the manufacture of illuminating gas, by way of license for its corporate franchise. The word "franchise" is used, generally, to designate a right or privilege conferred by law. It may be defined to be a special privilege, conferred by the sovereign authority upon individuals, which does not belong to the citizens of the state generally, of common right. Thus, when the legislature grants a charter of incorporation, it confers upon the grantees of the charter the right or privilege of forming a corporate association, and of acting, within certain limits, in a corporate capacity, and this right or privilege is called the "cor-

porate franchise." 2 Mor. Priv. Corp. § 922. If we read the first section of the New Jersey act of 1884, which we have just quoted, in view of this fundamental definition of a "corporate franchise," its provision will be this, in effect: Every gas company shall pay an annual tax of one-half of 1 per cent. upon its gross receipts, and 5 per centum upon dividends earned or declared in excess of 4 per centum, by way of a license for the right to continue and to act as a corporate association.

It has never been doubted that the legislative authority in making a grant of such franchise can prescribe such terms and such conditions for its acceptance and for its enjoyment as to it shall seem best, not inconsistent with constitutional limitations. The manner of enjoying the franchise, its life, its scope, are all subject to legislative control. It is true that such grants are said to be in the nature of a contract. But if the right to amend or to alter or to repeal the grant be, in the grant itself, reserved to the sovereign, the terms and conditions originally annexed to the grant, although accepted and acted upon by the grantee do not become irrepealable contracts, but may be altered or revoked or amended at the will of the grantor. When, therefore, a legislature enacts a charter containing a reservation of the power of alteration, it, in effect, authorizes the formation of a corporation only upon condition that the state may thereafter exercise such control over the corporation, and its enjoyment of franchises, as the power reserved implies; and the persons accepting the grant, and under it forming a corporation, must be held to assent to such condition. The act incorporating the plaintiff is of this character. By it the plaintiff corporation is endowed with all the general powers, and is made subject to all the restrictions and liabilities, contained in the act entitled "An act concerning corporations," approved February 14, 1846. One of the restrictive clauses of that act provides that the charter of every corporation which shall hereafter be granted by or created under any of the acts of the legislature shall be subject to alteration, suspension, and repeal, in the discretion of the legislature. This is decisive as to the power of the legislature to alter, suspend, or repeal the charter of the plaintiff. Indeed, without such express subjection to the legislative power, it has been uniformly held by the highest courts of New Jersey that every act of incorporation granted since the adoption of the corporation act of 1846 is subject to alteration, suspension, or repeal at the legislative discretion, although there should be no words in the act of incorporation expressly so declaring. *State* v. *Person*, 32 N. J. Law, 134, 566; *State* v. *Douglas*, 34 N. J. Law, 83. Hence the continued enjoyment of corporate franchises granted to the plaintiff is subject to such terms and conditions as the legislature may in its discretion from time to time impose. It has seen fit to exercise this discretion, and to impose upon the plaintiff a new condition, upon compliance with which it can continue to enjoy the franchises heretofore granted. By the act of 1884, referred to, it has declared what that condition is, namely: the payment of an annual tax or charge or impost by way of license. In this connection the meaning of the phrase "by way of" becomes important. It is idio-

matic, and perhaps may be difficult of rendition into exact phraseology, but it may be taken to mean " as for the purpose of," "in character of," " as being." To substitute either one of these synonymous phrases for the one used in the act would make it read as follows: " Certain corporations shall pay an annual tax for the use of the state, 'as for the purpose of' a license, or ' in character of a license,' or ' as being' a license for corporate franchise." Or, to paraphrase the section somewhat: " Every corporation designated in the act shall have and use and enjoy its corporate franchises, heretofore granted, upon the payment, for the benefit of the state, of a license fee, exacted for such use and enjoyment." A brief reference to the seventh section of the act of 1884 makes this construction certain. By that section of the act is provided a penalty—a punishment—for the failure or refusal of the corporations designated to pay this "tax," so-called,—license fee in reality. The punishment is the restraint of the corporations by injunction from making any use of the corporate franchises until the license fee for such use and enjoyment is paid. The failure or refusal to obey the provisions of the law does not work a forfeiture of the corporate franchises. The willful or negligent breach of the newly-imposed condition of the grant is not followed by a revocation of the grant, as a penalty, nor does it render the corporation liable to dissolution. The life of the corporation is wholly unaffected by its lawlessness in this respect. Its franchises are preserved to it, but the use of those franchises is made to depend upon the payment of the license fee. This seems to be a fair and reasonable construction of the act; that while it apparently imposes upon certain corporations, of which the plaintiff is one, a tax, *eo nomine*, its object is to exact a license fee for the use and enjoyment of franchises heretofore granted. It is difficult to imagine any other construction which will preserve the least harmony between the act in question and the constitution of the state; and it is not surprising, therefore, to find that the highest courts in New Jersey have adopted it. Thus in *Cable Co.* v. *Attorney General*, 46 N. J. Eq. 273, 19 Atl. Rep. 733, Mr. Justice KNAPP, in delivering the opinion of the court of errors and appeals, construing this act, says:

"The law in question imposes a tax on certain corporations by way of a license for exercising corporate franchises. It is declared to be such a tax by the act, and, although it is laid upon this class of corporations with respect to the capital stock, the tax possesses the legal quality of a license. Upon the power of the legislature to impose such a tax there exists no restriction in our constitution."

In *State* v. *Board of Assessors*, 47 N. J. Law, 36, Mr. Justice DEPUE, construing the same act, says: "By the fourth section of this act a tax in the shape of a yearly license fee was laid upon   *   *   *   gas companies." And in *Press Printing Co.* v. *Board of Assessors*, 51 N. J. Law, 75, 16 Atl. Rep. 173, the same learned judge says of the tax imposed by this act: "The tax imposed by the statute is a license fee to exercise corporate franchises." The construction of a state law by the highest courts in the state ought to have, and justly has, the weightiest influence upon

the judgment of the federal courts, and is by them usually accepted as conclusive. *Elmwood* v. *Marcy*, 92 U. S. 289; *Fairfield* v. *Gallatin Co.*, 100 U. S. 47; *Post* v. *Supervisors*, 105 U. S. 667. As has already been suggested, this construction seems to be the only one which successfully avoids the most serious and palpable contravention of the constitution of the state, and hence it must commend itself to the judgment of a judicial tribunal. If, then, this so-called "tax" or "impost" is a license fee exacted for the enjoyment of corporate franchises, it follows that it cannot be a tax upon franchises as such. In the one case the license fee is exacted without regard to the value of the franchise, and is paid for the use and enjoyment only of the franchise. In the other, as a tax, it must be assessed upon the franchise itself, as a thing of value, whose value can be accurately ascertained, for it is settled in New Jersey that a franchise is property, (*Board of Assessors* v. *Railroad Co.*, 48 N. J. Law, 283, 4 Atl. Rep. 578,) and as such, when it is to be taxed, its true value must be arrived at in some way, as furnishing the basis of its assessment; for, as it is "property," it falls directly within the protecting clause of the constitution of New Jersey that "property is to be assessed by general laws and uniform rules, according to its true value."

But it is plainly evident that to the legislative mind this act did not in any wise concern itself with the assessment or taxation of any class of property as property, for nowhere within its provisions, by the most thorough scrutiny, can there be discovered any plan or method or scheme or machinery for the ascertainment of the value of anything therein made liable to the exaction of a fee or charge or impost, and enjoyable by the payment of such fee or charge or impost. The ascertainment of the true value of a franchise, as the preliminary condition of taxation, is not hinted at. Nor is the true value of a franchise taken into account in determining the license fee to be paid for its enjoyment. The basis for and determination of such license fee is made arbitrarily by the legislature, without the slightest regard for the value of the franchise, as a franchise, or, in other words, as property. It cannot be pretended that dividends declared by a corporation afford any safe criterion of value of franchises. Possibly gross receipts might bear some comparative relation to the value of corporate franchises; but the declaration of dividends depends, primarily, upon the determination of a board of directors, who may be influenced in their action by various causes wholly foreign to or disconnected with the amount of earnings with which they are dealing. They may increase or diminish the rate as to them seems best. So uncertain a standard cannot be used to ascertain a true value.

To hold, then, as was insisted so ably by the counsel for plaintiff, that this act imposes a tax upon franchises, is to declare that it contravenes the constitution of the state in one of its most important provisions, in that it would tax property arbitrarily, and not according to its ascertained true value. Such construction would destroy the act itself. It was in harmony with this view that the court of errors and appeals, in the case of *Cable Co.* v. *Attorney General*, (cited *supra*,) declared that the tax imposed by this act was not a tax upon property, but was

exacted by way of license for the exercise of corporate franchises. In this conclusion I concur, and it therefore follows that, as the defendant corporation has not contracted to pay license fees that may be exacted from the plaintiff corporation by the state for the use and enjoyment of corporate franchises, and as such license fees cannot be regarded as taxes either upon real and personal property, franchises, capital stock, or gross receipts, the defendant is not liable as charged in this action, and is entitled to judgment upon the facts and the law applicable thereto. This finding renders it unnecessary to consider the other defenses interposed.