# Chesapeake & Ohio Railway Company v. Louisville & Nashville Railroad Company.

(Decided June 20, 1913).

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

Contracts—Between Two Railroads As To Use of Railroad—Apportionment of Taxes and Franchise Taxes.—Under a contract between two railroad companies by which one granted to the other the right to use a part of its railroad, the grantee agreeing to pay its proportion of the taxes on that part of the railroad according to the number of engines and cars which each run over it, the grantee having no use for the grantor's engines and cars, the grantee is not responsible for the tax on the grantor's engines and cars or for the franchise tax of the grantor, the franchise tax being a tax on the intangible property of the grantor.

HUMPHREY, MIDDLETON & HUMPHREY for appellant.

HELM & HELM, H. L. STONE, BENJAMIN D. WARFIELD and C. H. MOORMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—. Reversing.

On March 23, 1895, a written contract was entered into between the Louisville & Nashville Railroad Company of the one part and the Elizabethtown, Lexington and Big Sandy Railroad Company and the Chesapeake and Ohio Railway Company of the second part by which the Louisville and Nashville Railroad Company granted to the other two companies jointly and severally the right to use jointly with it its line of railway between Lexington and Louisville, Kentucky, including sidings, and switches, water tanks, real estate, and all other property incident and necessary to the use of the railroad for the purpose of running passenger and freight trains. It was stipulated in the contract that all business originating upon the line between Louisville and Lexington, exclusive of business from either of these points to the other, should belong exclusively to the grantor, and that the grantees should pay the grantor a certain per cent of all fares collected by them. In addition to this they were to pay a rental of $5,000 a month. The seventh clause of the contract is in these words:

"Seventh. In addition to the fixed rentals or interest moneys and other payments to be paid as here-

inafter provided the second parties agree to pay such proportion of the cost of maintenance, repairs, renewals, and improvements of that part of the road jointly used, and such proportion of the wages of telegraph operators and other employes and officers in the joint service of the two parties under this contract, as the number of engines and car miles of the parties of the second part run over said railway bears to the total number of engines and car miles run over said railway; it being understood and agreed that no charge shall be made for services of general or accounting officers of the party of the first part, except for such as are actually "employed in conducting the business of this particular part of the lines of the party of the first part.

"The said second parties also agree, as part payment for their said use of said line of railway and facilities, to pay to the said first party their like proportionate share of all taxes and public rates assessed on such portion of first parties said line of railway, such share of said taxes and public rates to be based upon the car and engine mileage as hereinbefore provided in regard to maintenance, etc., which share of taxes and public rates shall be paid to the first party by the second parties within fifteen days from the date when the first party presents to the second parties, or either of them, receipted tax bills showing the amount of taxes paid by first party on such portion of its railway.

"The first party shall keep an accurate account of all such cost and expense of maintenance, etc., to be jointly borne by the parties hereto, and shall furnish the second parties with a copy of the same on or before the fifteenth day of each month succeeding the month for which statement is rendered and the amount due from the second parties to the first party on such account shall be paid on or before the fifteenth day of the month following the month in which said statement is rendered. Satisfactory evidence of all disbursements made on account of maintenance or additional construction, shall be furnished as desired by the second parties."

The controversy before us arises upon the proper construction of the words "all taxes and public rates assessed on such portion of first party's said line of railway." Under sections 4096-4098 Ky. Stats., the value of all the railroads of the state for the purpose of being operated as carriers of freight and passengers in-

cluding engines and cars, depot grounds and improvements and other real estate is fixed by the railroad commission. In addition to this valuation of the physical properties of every railroad company by the railroad commission, the Board of Valuation and Assessment under sections 4077-4081 Ky. Stats., ascertains the total value of all the property of every railroad company including all its franchises and incorporeal rights or intangible property, and from this total valuation is subtracted the value of its physical property as fixed by the railroad commission. The balance left is the amount on which a tax is levied under these sections, and this tax as well as the tax on the physical property is apportioned to each taxing district according to the number of miles of the railroad in it. The grantees in the above contract insist that they are liable under the contract only for their proportion of the taxes on the physical property of the railway between Lexington and Louisville, excluding the engines and cars of the grantor. The grantor insists that they are liable for their proportion of the entire tax levied on the valuation fixed by the railroad commission, and in addition to this for their proportion of its franchise tax as fixed by the Board of Valuation and Assessment. The circuit court sustained the latter view. The grantees appeal.

In Louisville and Nashville Railroad Company v. City of Henderson, 154 Ky., 575, we hold that the franchise tax levied under sections 4077-4081 Ky. Stats., is only a tax on the intangible property of the company. The assessment made by the railroad commission under section 4096 Ky. Stats., is made as the value of the physical property of the railroad company "for the purpose of being operated as a carrier of freight and passengers." The contract before us binds the grantees to pay their "proportionate share of all taxes and public rates assessed on such portion of first party's said line of railway." This language naturally construed includes only taxes levied upon the line of railway between Lexington and Louisville, and when this line of railway is assessed at its value for the purpose of being operated as a carrier of freight and passengers,, the taxes on such assessments are all that the language of the contract naturally construed, fairly includes. To hold that these words include taxes on the intangible property of the grantor would be to extend their meaning beyond the words of the contract. To illustrate, the

rent which the grantees pay, the money which they turn over from the fares collected by them, all go to swell the income of the grantor, and to increase the amount of its assessment under section 4077, and manifestly it was not contemplated by the contract that the grantees were to pay taxes on the money which they paid the grantor for rent. The grantor may own a large amount of stocks and bonds, or other personal property, but certainly it was not contemplated by the contract that the grantees were to pay the taxes on these. We have decided that the grantees exercise their own franchise over this line of railway, and must pay a franchise tax thereon. (Jefferson Co. v. Board, etc., 117 Ky., 531). And certainly it was not contemplated that the grantees were to pay their own franchise taxes for operating these roads, and in addition pay a part of the grantor's franchise tax.

As to the engines and cars of the grantor we reach a similar conclusion. The grantees have no use of these engines and cars as they use their own engines and cars. In contracting that they would pay their share of the taxes on the railroad, they were evidently influenced by the fact that they enjoyed the use of the railroad, but it is not to be presumed that they were to pay taxes on engines and cars which they did not use and which were used exclusively by the grantor. The language of the contract only includes taxes on the railroad. It is true that in valuing the railroad at so much a mile, the railroad commission takes into consideration the engines and cars, and includes them in the assessment. But how much these things swell the assessment can readily be ascertained by reference to the reports filed with the railroad commission and comparing the values given in the reports with the values fixed by the commission.

We, therefore, conclude that the grantees under the contract are not liable either for the franchise tax of the grantor or for the taxes on its engines and cars.

Judgment reversed and cause remanded for a judgment as above indicated.