Des Moines Union Railway Company, Appellee, v. Chicago Great Western Railway Company, Appellant.

**CONTRACTS:** Construction—Agreement to Pay "Taxes" and Assessments. An agreement by a tenant to pay "all taxes or assessments, special or otherwise, and public charges of every kind and nature that shall or may be taxed or assessed against the owner or his property," is not so all-embracing and sweeping as to include Federal *income* or excise taxes, levied under subsequently enacted statutes.

> Salinger, J., dissents.

**CONTRACTS:** All-Embracing Words Limited by Context and Circumstances. Words which are all-embracing and sweeping in their *possible* meaning may reveal a much lesser meaning when the *natural import* of such words is kept in mind, and when they are read in the light of the context and the attending facts and circumstances. So held where an agreement by a tenant to pay "taxes" and "assessments" was held not to include the payment of *income* or *excise* taxes, levied under laws passed subsequent to the agreement.

**TAXATION:** "Tax" Defined. The term "tax" ordinarily embraces no more than the customary and annual taxes. So held where an agreement by a tenant to pay all "taxes and assessments" was held not to include Federal income or excise taxes.

*Appeal from Polk District Court.*—Thomas J. Guthrie, Judge.

April 13, 1920.

The opinion states the case.—*Reversed.*

*Carr, Carr & Evans,* for appellant.

*Parrish & Cohen,* for appellee.

Weaver, C. J.—The plaintiff is a corporation, owning a railway, and, in connection therewith, certain terminal facilities in the city of Des Moines. The defendant is also

a corporation, owning and operating a line
of railway extending from Chicago, in the
state of Illinois, to and through the city of
Des Moines, and thence to Kansas City, in
the state of Missouri. In the record before
us, the plaintiff is spoken of as the "Des Moines Company,"
and the defendant as the "Chicago Company," and, for convenience, they will be so designated in this opinion.

**1. CONTRACTS: construction: agreement to pay "taxes" and assessments.**

On July 2, 1896, the plaintiff and the corporation then
owning the Chicago railway entered into a written contract,
by which the Chicago Company was granted the right to the
use of a portion of the property of the Des Moines Company, located in the latter city, and the Des Moines Company, on its part, also undertook to render certain services
for the Chicago Company. The contract was to continue in
force for the term of 25 years. Among the stipulations of
said contract is one upon the proper interpretation and effect of which this case is made to turn. The ninth section
or clause of the contract sets forth the considerations which
the Chicago Company is to render or pay to the Des Moines
Company for the agreement so entered into by the latter.
Among these considerations are the following:

"9. The Chicago Company, in consideration of the
grants and provisions hereof, agrees to pay to the Des
Moines Company in the manner and at the times hereinafter specified, the following sums, to wit:    *    *    *

"5th. One third of all taxes or assessments, special or
otherwise, and public charges of every kind and nature that
shall or may be taxed or assessed against the Des Moines
Company or its property during the aforesaid term of
years.    *    *    *"

Provision was further made for the keeping and rendering of mutual accounts, and for monthly payments.

Later, the Chicago Company, named in this contract,
was succeeded in the ownership and control of said rail-

way by the defendant in this case, and, by agreement thereafter made between plaintiff and defendant, the latter assumed the liability of its predecessor thereunder.

This action is brought at law by the Des Moines Company, to recover an amount which it alleges is due and payable to it under the terms of said contract. The alleged facts upon which that claim is founded, as stated in the petition, are that, in each of the years 1914, 1915, and 1916, the United States of America assessed against plaintiff and its property an income tax, aggregating for said three years the sum of $6,263.18, which assessments have been paid and discharged in full by the plaintiff, and that defendant thereby became charged with the duty, under its contract above quoted, to repay to the plaintiff the one-third part of said levies. The petition further alleges that, in the year 1917, the United States assessed against the plaintiff an excise tax on the estimated value of its capital stock, to the amount of $428.50, and thereafter, a further tax of like character for the year 1918, to the amount of $938.50, all of which has been paid by the plaintiff, and for one third of which amount it demands a recovery from the defendant.

To this petition the defendant demurred, on grounds which may be briefly stated as follows: That the defendant's covenant, as shown by reference to the contract, does not provide for payment by it of the income taxes or excise taxes imposed on the plaintiff by the Federal government, nor is such obligation in any manner to be implied from the terms of the contract, nor does the language thereof evidence any such intent.

The trial court overruled the demurrer, and defendant, electing to stand thereon, declined to plead over, and excepted to the ruling. Judgment was thereupon entered in plaintiff's favor for the amount of its demand, and defendant appeals.

The particular clause of the contract on which the

plaintiff's claim is based, is in the above-quoted agreement of the defendant "to pay one third of all taxes or assessments, special or otherwise, and public charges of every kind and nature that shall or may be taxed or assessed against the Des Moines Company or its property during the term."

The demurrer admits the making of the contract and defendant's obligation to contribute to the payment of the taxes therein specified, but it is contended that such agreement does not cover or include the income tax or excise tax imposed by the United States and paid by the appellee. It is this question of construction to which we must address ourselves.

I. "Taxes," "taxation," and "assessments" are words in very common and familiar use, the meaning and effect of which are not ordinarily open to serious question; but, like most other words in our language, their scope and application vary according to the nature of the subject under discussion and the circumstances under which they are used. Taxation, in its broadest and most general sense, includes every charge or burden imposed by the sovereign power upon persons, property, or property rights, for the use and support of the government, and to enable it to discharge its appropriate functions; and in that broad definition there is included a proportionate levy upon persons or property, and all the various other methods and devices by which revenue is exacted from persons and property for public purposes. It is only occasionally, however, that the word "tax" or "taxation" is used in this all-embracing and sweeping sense, and legislatures, courts, and the people have come to differentiate between "general" taxes, "ordinary" taxes, "property" taxes, "excise" taxes, "inheritance" taxes, "occupation" taxes, "special" taxes or assessments, "franchise" taxes, "poll" taxes, "license" taxes, "income" taxes,

"excess profits" taxes, and various other methods by which contributions to the public revenues are enforced.

When, therefore, we are called to consider a contract in which one party has covenanted with another to pay taxes, and the question arises as to the scope and extent of that obligation, the terms of the covenant are, ordinarily, open to construction. The end and purpose of the construction of an agreement are to arrive at the real meaning and intent of the parties. To that end, we must consider first the natural import of the words or language the parties have chosen for its expression, and read it in the light of its context, as well as in the light of the circumstances under which it was made. Thus reading the contract before us, we are brought to inquire whether the words "taxes" and "assessments" must be given their broadest and most general signification, or whether the intent of the parties will be better effectuated by so limiting them as not to include the income tax and excise tax which the plaintiff has been required to pay. At the time when the contract was made, and for a considerable period of years thereafter, there was no law requiring payment of either an income tax or excise tax, nor was there any apparent reason for anticipating such a change in the policy or manner of raising public revenues. This fact alone would probably not be a sufficient answer or defense to the plaintiff's claim, but it is one of the pertinent facts or circumstances which the court may consider, as bearing upon the intent of the parties. *Love v. Howard,* 6 R. I. 116; *Second Univ. Society v. City of Providence,* 6 R. I. 235. See, also, as to the bearing of such fact upon the question of the intent of the parties, *King v. Raab,* 123 Iowa 632, 636.

In *Bolling v. Stokes,* 2 Leigh (Va.) 178, decided by the Virginia court, a lessee covenanted with the owner of the property to pay a specified yearly rent, "besides all taxes

2. CONTRACTS : all-embracing words limited by context and circumstances.

and other public dues in any manner accruing" upon the premises, which rent should be paid half yearly, "besides taxes and public dues of every kind." During the term of the lease, the street was paved, and the cost assessed upon the property. The lessee paid the assessment, and later, sued the owner to recover the expense so incurred. In sustaining the plaintiff's right to recover, the court says that "the words in the covenant are very strong," but they "may be satisfied by the application of them to the ordinary and usual taxes and public dues. To extend them to an expense unknown by the parties, incalculable as to amount, uncertain as to time, and in which the lessee could have no certain interest, would be to disregard all the circumstances under which the contract was made. * * * There was nothing by which it could be estimated, like the usual and customary taxes and public dues. * * * It was an uncertain and extraordinary assessment."

The Massachusetts court, speaking upon the subject, says:

"In a covenant for payment of taxes by a lessee, it is to be ascertained by construction what was contemplated by the parties in the use of the terms employed. Those terms are not necessarily to be taken in their strict legal signification." *Harvard College v. Aldermen of Boston,* 104 Mass. 470, 483.

Further discussing the matter of construction, it is said, in the same case, that:

"It may be affected by the character, situation, and condition of the estate, the mode and purpose of occupation by the tenant, and by all the circumstances of the particular case. Much consideration is sometimes given to the consideration that the assessment in question is of a kind in use or authorized at the time the covenant was entered into, or, on the other hand, of a novel or newly authorized nature."

This is not to deny that, where the words of the con-

tract appear to have been chosen advisedly, and are such as clearly indicate a mutual intent to provide for all possible forms of taxation, such intent will be given effect by the courts. Such intent is not, however, conclusively established by the use of sweeping, general terms, if, by a proper application of the rule of *ejusdem generis,* or other recognized canon of construction, the covenants of the parties "may be satisfied by the application of them" to less burdensome obligations. *Bolling v. Stokes,* supra.

3. TAXATION: "tax" defined.

In an English case, *Jeffrey v. Neale,* L. R. 6 C. P. 240, the court, speaking of a lessee's covenant, says:

"It has frequently been held that, in cases of this nature, some amount of qualification must be placed on words which, at first sight, might be capable of a very extensive signification."

For example, it has been held that a covenant to pay "all taxes and other public dues" imposes no obligation to pay other than the customary and annual taxes and public dues. See *Bolling v. Stokes,* supra.

So, also, it is held that a covenant to pay "all and every United States, state, and local taxes, duties, and imposts" does not include special assessments (*Pettibone v. Smith,* 150 Pa. St. 118 [24 Atl. 693]), although it is there admitted that such assessments are levied by virtue of the taxing power of the state, and do constitute a species of taxation.

In *Love v. Howard,* supra, decided by the Rhode Island court, the same rule was applied to a covenant which bound the tenant to pay "all assessments and taxes of every kind." So, too, an agreement to pay "all taxes, assessments, and municipal or government charges, general and special, ordinary and extraordinary, of every nature and kind whatsoever, which * * * during the life of this lease becomes payable (a) levied, imposed, or assessed upon any land hereby demised; or (b) levied, imposed, or assessed

upon any interest of the lessor in or under this lease; or (c) which the lessor shall be required to pay by reason of or on account of his interest in said land and improvements or in or under this lease," does not impose upon the lessee any obligation to pay an inheritance tax which had been exacted by the state from the lessor's executor during the term of the lease. Other precedents along this line are not wanting, and the rules of construction to which we have adverted are well established.

The cases cited sufficiently illustrate the solicitude of the courts to ascertain and give effect to the real intent of the contracting parties. In performing that duty, the court will, to the best of its ability, place itself in the situation occupied by the parties when the contract was made, "so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct ap- plication of the language to the things described." *Nash v. Towne,* 72 U. S. 689; *Canal Co. v. Hill,* 15 Wall. (U. S.) 94.

Were the concrete question, in the form here presented, an entirely new one, it would fall readily within the scope of the principles illustrated by the cited precedents, and compel the conclusion that payment of an income tax which might possibly be levied under some law not yet in being was not within the contemplation of the parties, and is not required by the terms of the covenant. But we are not left to dispose of the matter as one of first impression, and, in so far as the courts have spoken, they are in harmony with the conclusion here stated.

First in order of time, so far as our investigation has gone, we have the case of *Van Rensselaer v. Dennison,* 8 Barb. (N. Y.) 23. There, the lessee in a perpetual lease covenanted to pay "all ordinary and extraordinary taxes, charges, and assessments," and this undertaking was held not to include any obligation to pay the taxes assessed

against the landlord upon the rents payable to him. The rule so applied was confirmed in *Woodruff v. Oswego Starch Factory,* 70 App. Div. (N. Y.) 481, and recognized, also, in *Robinson v. County of Allegheny,* 7 Pa. St. 161. Later, the *Woodruff* case appears to have reached the court of last resort in New York (see 68 N. E. 994), and the judgment below was affirmed. The covenant in that case was much broader and more inclusive in its terms than is the one we are now considering. The tenant there agreed to pay "all taxes, charges and assessments, ordinary and extraordinary, which shall be taxed, charged, imposed or assessed on the hereby demised premises and privileges, or any part thereof, or *on the said parties of the first part* (the lessors), their heirs and assigns, in respect thereof." The court, though expressly recognizing that, in legal theory, it may be said that a tax upon rents or income from real estate is, in a sense, a tax upon land, holds that such taxes are not within the covenant. The fact that the court in that case lays some stress on the effect of an act of the legislature making such rents or income a distinct item for the purposes of taxation, does not, in principle, differentiate the question there decided from the one in this case, but rather makes more complete their parallelism, because the effect of the Federal income tax is, in all respects, similar to that which was occasioned by the New York statute, in that it segregates or sets apart the income, as a distinct or separate item for taxing purposes.

Later, the same question came before the Pennsylvania court, under circumstances not materially unlike those admitted by the demurrer in this case. *Catawissa R. Co. v. Philadelphia & R. R. Co.,* 255 Pa. St. 269. There, the Catawissa Railroad Company leased its road and equipment to the Philadelphia & Reading Company for a long term of years. By the terms of the lease, the latter company undertook to pay "all taxes, charges and assessments which, dur-

ing the continuance of the term hereby demised, shall be assessed or imposed under any existing or future law on the demised premises or any part thereof, or on the business there carried on, or on the receipts, gross or net, derived therefrom, or upon the several issues of bonds or the interest thereon, or upon capital stock of the Catawissa Company or the dividends thereon, or upon the franchises of said company, for the payment or collection of any of which said taxes the Catawissa Company may otherwise be or become liable or accountable under any lawful authority whatever." As in the case at bar, the lessor company was subsequently assessed with an income tax under the Federal statute, and, having paid, it brought action to recover the amount from the lessee. The case thus stated is, to use a common expression, "on all fours" with our own. As in our case, also, the trial court held with the leasing company, that the tenant company was liable. On appeal, that judgment was reversed, on the ground that an income tax levied on the rents paid to the lessor is not, in any proper sense, imposed upon the demised premises, nor on the business there carried on, nor on the receipts, gross or net, derived therefrom, nor upon the capital stock of the lessor company, or the dividends thereon, nor on the franchises of that company.

Still more recently, a like case arose in Massachusetts (*Codman v. American Piano Co.*, 229 Mass. 285 [118 N. E. 344]). There, the lessee covenanted to pay "all taxes and assessments whatsoever which may be payable for or in respect of the leased premises during the term thereof, except assessments for betterments." A Federal income tax having been assessed to and paid by the lessor, suit was brought therefor against the tenant. In a previous case, that court had permitted a recovery by the landlord against his tenant for income tax paid, because, by the express terms of the lease, the latter had agreed to pay all taxes, including those

"levied upon or in respect of the rent payable" under the contract (*Suter v. Jordan Marsh Co.*, 225 Mass. 34) ; but, there being no such covenant in the *Codman* case, a recovery was denied. Discussing the question, the court says, in the *Codman* case, at page 290:

"Manifestly, taxes upon the real estate come within the terms of the covenant. * * * On the other hand, we cannot construe the phrase in question as including within its terms a tax assessed by the Federal government to the lessor upon the rents reserved under the lease. Such an assessment is upon an entirely distinct kind of property than is the assessment upon the real estate. While, under the Federal income tax law, a tax on rent is a tax on land, and so a direct tax, yet a tax on land is not a tax on rent; the defendant did not covenant to pay taxes for and in respect of the rent; his undertaking is to pay the taxes for or in respect of the premises. * * * In construing the covenant, it is plain that taxation upon real estate means one thing, and taxation upon income means another. * * * The fundamental fact on which the rights of the parties depend is that the defendant never agreed to pay the taxes on the rent. * * * The words chosen by the parties cannot fairly be extended by us beyond their natural or ordinary meaning, and therefore the defendant cannot be held liable for taxes which the covenant, neither by express words nor reasonable implication, obliged him to pay."

In the case from which we have quoted, the plaintiff, as does counsel for appellee in this case, lays much stress on language used by the Supreme Court of the United States in *Pollock v. Farmers' L. & T. Co.*, 157 U. S. 429, to the effect that "a tax upon the income from real estate is a tax upon the real estate itself;" and from this it is argued that the appellant's general undertaking in the lease to pay one third of "all taxes and assessments, special or otherwise, and public charges of every kind and nature," must, there-

fore, be construed to include payment of the income tax.

As is well pointed out in the cited Massachusetts case, we can get the true meaning and effect of the language quoted from *Pollock v. Farmers' L. & T. Co.* only by reading it in connection with the question there decided. The case arose under the income tax law of 1894, and the court was considering whether taxes upon incomes from land and from certain other sources were direct or indirect, within the meaning of the provision of the Federal Constitution, governing the apportioning of direct taxation among the states of the Union, and it is with reference to that proposition that the court did say, in the *Pollock* case, at page 581, that "an annual tax upon the annual value or annual user of real estate appears to us the same, in substance, as an annual tax on the real estate, which would be paid out of the rent or income." It was, therefore, held that, because a tax upon the land is direct, a tax upon rent of land is also direct.

Of this holding it is said, in *Codman v. American Piano Co.,* supra, that:

"The decision in the *Pollock* case, that a tax on rents of real estate is a direct tax, and that, therefore, the Federal income law which provided for a tax upon such rents was unconstitutional, related only to the constitutional power of Congress to tax incomes. The court did not consider or decide that a tax on rent was a tax for or in respect to the premises from which the rent was derived. That is a wholly different question."

It should also be noticed that the *Pollock* case was before the court again on rehearing (see 158 U. S. 601, 618), and a further opinion was written. In that opinion, the scope and intent of the original opinion are quite carefully limited, as follows:

"Our previous decision was confined to the consideration of the validity of the tax on income from real estate,

and on the income from municipal bonds. The question thus limited was whether the taxation was direct or not, in the meaning of the Constitution; and the court went no farther, as to tax on income from real estate, than to hold that it fell within the same class as the source whence the income was derived: that is, that a tax upon the realty and a tax upon the receipts therefrom were alike direct."

By an amendment to the Federal Constitution, since adopted, the question at issue in the *Pollock* case is foreclosed against further discussion; for the apportionment of direct taxes among the states is no longer required. See 16th Amendment, adopted February 25, 1913. There is nothing in the precedent cited, or in others of like import to which our attention has been called, which requires the court to hold that a tenant's covenant to pay all taxes or assessments imposed upon the demised premises, or upon the lessor with respect thereto, includes any obligation on the tenant's part to pay an income tax assessed by the Federal government upon the lessor's income so derived. If it be competent for the parties to contract for such extreme breadth of obligation,—and, for the purposes of this case, it may be taken for granted,—it is to be said that there is no such express obligation to be found in the contract sued upon, nor is it necessarily, or even reasonably, to be implied from the language used.

II. To a great extent, what we have said with reference to the claim to recover the amount of income tax paid, is equally applicable to the item of so-called special excise tax paid by plaintiff to the United States. The term "excise tax" is one scarcely capable of exact definition. It has been variously applied, but perhaps more often than otherwise it denotes an inland duty or impost upon certain specified articles of manufacture or sale; or, still more familiarly, it has reference to license fees, exacted by law as the

price of the privilege to engage in a given line of trade or business.  3 Words and Phrases 2548.

The Federal statute in question, Act of Congress of September 8, 1916, appears to employ the word more nearly in the latter sense; for it is there described as a "special excise tax with reference to the carrying on or doing business by such corporation."  It is not a tax upon the leased property in the hands of the tenant, nor a tax upon the tenant's business, nor is it exacted of the tenant as a condition or price of its right or privilege to use the demised premises. It is, at most, a condition placed upon the right of the plaintiff corporation to do business of any kind, whether the business be with the defendant or with any third party, or be business with reference to the terminal facilities leased to the defendant, or to any separate and distinct matter or enterprise in which it sees fit to engage, wholly foreign to the business relations between lessor and this lessee.  It is sufficient to say that the plaintiff's covenant does not contemplate payment of such a charge.  The question is touched upon in *Jersey City Gas Light Co., v. Union Gas Imp. Co.*, 46 Fed. 264, which is affirmed in 7 C. C. A. 250.  There, the lessee of the plaintiff company had undertaken to pay "all assessments and taxes on the real and personal property, franchises, capital stock or gross receipts of the lessor." Plaintiff having been required by statute to pay a certain percentage of its gross receipts "by way of license for its corporate franchise," it was held that the tenant was not liable for its repayment.  The court denied the plaintiff's theory that the tax or fee paid was in the nature of a franchise tax, and therefore chargeable to plaintiff, under the express terms of the lease, but held it was, rather, a charge or tax exacted by way of a license to do business, and therefore not recoverable.  See, also, *Chesapeake & O. R. Co. v. Louisville & N. R. Co.*, 154 Ky. 637 (157 S. W. 1107).

For the reasons stated, we hold that the plaintiff is not

entitled to recover upon either item of its claim, and that the trial court erred in overruling the demurrer to the petition. The judgment appealed from is, therefore,—*Reversed.*

EVANS, GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J., dissents.